## Case No. 10,297.

### The NORFOLK et al.

BUTT v. The NORFOLK. BUTT v. The UNION. CORY v. The NORFOLK. CORY v. The UNION.

[2 Hughes, 123.] [1]

District Court, E. D. Virginia. Sept. 24, 1877.

JURISDICTION IN ADMIRALTY—EXCLUSIVE OF STATE COURTS—MARITIME LIENS — MATERIALS — STATE LAW—MORTGAGE—SEAMEN—PRIORITY — CHANGE IN OWNERSHIP.

1. Where the admiralty jurisdiction of the United States courts attaches at all, it does so exclusively of the jurisdiction of the state courts.

2. The assignment of his claim by a material-man does not defeat the admiralty lien.

[Cited in The Emma L. Coyne, Case No. 4,-466.]

3. It attaches against a home vessel in favor of a material-man, under section 5, c. 148, Code Va. 1873, and especially under chapter 44, Acts Assem. Va. 1876–77, enacted January 26, 1877.

4. The claims of a material-man and of a seaman or engineer of a ferry steamer are superior to that of a mortgagee.

[Cited in The Canada, 7 Fed. 735.]

5. Where there is no change of ownership circumstances must be very strong to render the claim of a regularly employed engineer of ferry steamers for wages in arrear stale.

6. A claim by an engineer for overdue and unpaid wages does not necessarily become stale in twenty months.

In admiralty, for supplies furnished and for seamen's wages.

James M. Butt files two libels for supplies furnished on the credit of the boats about to be named. William H. H. Cory, engineer of the same boats, plying across Norfolk harbor, files two libels, one against each of them. The boats are ferry steamers which were used on the Ferry Point or Berkeley Ferry, named the Norfolk and the Union. The steamers were run alternately, one of them running when the other was withdrawn for repairs. Cory's service began in March, 1873, and terminated on the 1st of June, 1877, his wages being, by agreement, at the rate of $65 per month; and he claims that there was due him at his retirement from the line, the sum of $1269.96, which is equivalent to an arrearage for nearly twenty months. A statement of the items showing the balance thus claimed to be due him is filed with the libels, and is made out by J. A. Jackson, master and principal owner of the boats, and proved by the said master in evidence to be correct. Cory also avers in evidence the correctness of the claim. On the 1st of May, 1875, a deed of trust was made by Jesse A. Jackson, sole owner of the Norfolk, and by said Jackson and Lycurgus Berkeley, joint owners of the Union, conveying to Charles Sharp, trustee, these

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

two boats for the purpose of securing to Myer Myers the amount of a promissory note made by said Jackson and Berkeley for $2500, bearing six per cent. interest, and indorsed by B. & J. Baker, Tilley & Hunter, Charles W. Pettit, and William H. Lyons. The deed was recorded in the office of the collector of customs at Norfolk, pursuant to act of congress. It was stated in evidence by Jackson and Cory, that Cory being a well-to-do man, not needing the regular wages due him, the resources of the business were applied to paying the other employés on the boats and the interest periodically falling due on the note of Jackson and Berkeley, which interest was paid up to the 1st of August last past. It was sought in evidence by the indorsers of the promissory note, to bring Cory's account into question, and to show that the amount claimed was more than was due; but no competent evidence was adduced in support of the objection, nor was any issue of fraud raised in the pleadings. So that no defence was presented in form to be considered by the court, except the one made in the answers of the trustee and others, that the claim was, as to the larger part of it, stale, most of it having accrued after Cory had notice of the deed. It was shown in evidence that Cory for a year or more before his retirement from the service of the boats knew that there was a claim upon them to the amount of $2500, for which Pettit and others were sureties, and that this knowledge was such as would naturally put him upon inquiry to discover the existence of the lien of the deed of trust which had been given to secure the note to Myers. It seems that the firm of Beaman & Bro. had recovered judgment against J. A. Jackson in a state court in September, 1876, under which a state common law lien was acquired upon the estate of Jackson in December of that year; and that a chancery proceeding was instituted in the same court in March last, for discovery of the estate of Jackson, with a view to subjecting such estate to the judgment of Beaman & Bro. These judgment creditors, by counsel, intervene by petition, claiming that the admiralty has no proper jurisdiction in the premises; and that, although chapter 44 of the Acts of Assembly of Virginia for 1876–77, passed January 26, 1877, gives the libellant a lien upon these vessels for wages which accrued since its passage, yet that he has lost that lien for the greater portion of his wages by not having perfected it under the provisions of the 2d section of the act of assembly (chapter 200) of March 21, 1877. The same counsel contends that the libellant, Butt, had received by assignment, from a firm of which he was a partner, the note for which he now libels, which note the firm had taken from Jackson for supplies, and that by so doing he waived his lien in admiralty. He also claims that the assignee of this note

18 FED. CAS.—20

has no standing in admiralty, his taking the note having had the effect of waiving the admiralty lien.

C. B. Duffield, for libellants.

Charles Sharp and Thomas R. Borland, for claimants and sureties.

HUGHES, District Judge. As to the question of jurisdiction raised by counsel of Beaman & Bro., it could only be considered with reference to the libel and claim of James M. Butt, for supplies to the two boats. The law of Virginia, as it stood in chapter 148 of the Code of 1873, § 5, has been held by me, with the general acquiescence of the bar, to have given such a lien as is contemplated by rule 12 in admiralty, given in [Webb v. Sharp] 13 Wall. [80 U. S.] 14, and prescribed by the United States supreme court, and treated by that rule as a basis for the admiralty jurisdiction in favor of a material-man against a home vessel. The amendment of that section, made by act of assembly of January 26, 1877 (page 32 of Acts of 1876–77), was enacted solely for the purpose of making certain what had already been held to be clear on principle. It is also a settled principle of American law that where the United States courts have admiralty jurisdiction, the state courts have no constitutional jurisdiction; the admiralty jurisdiction being, in virtue of section 711 of the Revised Statutes of the United States, "exclusive of that of the state courts." That the admiralty court has everywhere jurisdiction of seamen's wages, earned on shipboard, and that in Virginia, by virtue of the lien expressly given by state law, admiralty has jurisdiction under rule 12 of the claims of material-men upon a home vessel for supplies furnished on the credit of the vessel, are propositions which cannot now be disputed. If the admiralty has jurisdiction at all, that jurisdiction is "exclusive of the state courts." Nor is there any validity in the objection that a note was taken for the amount due for supplies now the subject of libel. The supreme court has settled that point in the case of The St. Lawrence, 1 Black [66 U. S.] 532, and of The Guy, 9 Wall. [76 U. S.] 758; which decisions were mere affirmations of what was before the well-settled law of the subject. See 2 Pars. Shipp. & Adm. (Ed. of 1869) 152, 153. There is nothing in the objection that the claims for supplies have been assigned by the firm of Tilley, Morton & Eaton, and by the firm of Forbes & Butt, of which Butt was a member, to Butt individually. The doctrine of admiralty is, that the person really entitled to the claim is the one who should file the libel. See Ben. Adm. § 380, and authorities there cited.

The main question is, therefore, the only one left to be considered; which is, whether Cory's claim has become stale as to any part of it. The doctrine of the admiralty is,

that there must not be unreasonable delay in asserting a claim, where that delay of itself tends to produce injury to other claimants. Except as against innocent purchasers of vessels without notice of a claim, and without opportunity of knowing of its existence, the rule of staleness is not rigidly enforced in admiralty. In the present case the libellant was the engineer of the boats. when the trust deed to Sharp was executed, and has remained so until within three months of filing his libel. Being a man in such circumstances in life as did not render it necessary for him to collect his wages punctually, and being on such terms of friendship with the master and owner, Jackson, as to induce him to grant indulgence in the matter, and deferring his own claim for payment while the other employés on the boats were receiving their wages regularly, and while the interest accruing on the note secured by the trust deed was regularly paid, the indulgence he granted was such as the indorsers of the note ought not to complain of. I cannot, on any evidence that has been given in the case, believe that there has been fraudulent collusion in regard to the libellant's claim between Jackson and Cory. Jackson has no interest to prefer Cory; and himself and Cory bear good names in the community, and there is no proof either of act or motive on Jackson's part tending to establish a suspicion of fraudulent collusion, and so I feel bound to treat Cory's claim as proved. As there is no specific time within which an admiralty court will arbitrarily rule against a claim as stale, and as the question of staleness depends upon the circumstances of each case, and as in this case there is nothing to show unreasonable laches, much less laches for a fraudulent purpose on the part of the libellant, I do not feel at liberty to throw out any part of the libellant's claim of $1269.96, as stale. See The Key City, 14 Wall. [81 U. S.] 653; The Prospect [Case No. 11,443]; The Canton [Id. 2,388]; The Granite State [Id. 5,687]; The Mary [Id. 9.190]; The Sea Lark [Id. 12,579]; The D. C. Salisbury [Id. 3,694]; The General Cass [Id. 5,307]; The Cheesman [Id. 2,633]; The Gregory [Id. 4,-102]; The Cayuga [Id. 2,537]; Swett v. Black [Id. 13,690]; Cobb v. Howard [Id. 2,924]; Fretz v. Bull. 12 How. [53 U. S.] 468.

A decree may be taken for each of the libellants for the amounts claimed by them.