## THE " WOODLAND."

Drafts on the owner of a vessel do not bind her, unless the debt for which they were given by her master is a lien on her, although they express on their face that they are " recoverable against the vessel, freight, and cargo."

APPEAL from the Circuit Court of the United States for the Southern District of New York.

The facts are stated in the opinion of the court.

*Mr. James Ridgway* and *Mr. William R. Beebe* for the appellants.

*Mr. Henry J. Scudder, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is a suit in admiralty to recover of the bark " Woodland " and her freight the amount of two drafts drawn by the master of the vessel at St. Thomas, W. I., on her owners, one for the payment of $2,000, and the other for the payment of $2,606.40, in New York, to the order of J. Niles & Co., merchants in St. Thomas, ten days after sight. The facts found by the Circuit Court, which, in our opinion, are conclusive of the case, are as follows : —

The " Woodland " was a British bark owned by the claimants, residents of St. John, New Brunswick. In November, 1870, while on a voyage from Montevideo to New York with a cargo, being in distress, she put into the Danish port of St. Thomas for repairs, which were necessary before she could safely proceed on her voyage. J. Niles, who carried on business under the name of J. Niles & Co., attended to the affairs of the vessel at St. Thomas, landed the cargo, and sold a portion of it, on which he received an amount sufficient to reimburse all the moneys expended; but he charged for commissions and insurance $6,875. As to the insurance, none was actually effected, and the commissions were on an excessive valuation. The master approved all the bills, and drew drafts on his owners for a balance of $6,106.24, which expressed on their face that they were " recoverable against the vessel, freight,

and cargo." Two of these drafts the libellants discounted, and this suit was brought for their recovery. The third, for $1,500, was given by Niles to the master upon a corrupt understanding that it was to be his share. The two drafts have not been accepted or paid, and the libellants are the owners thereof, having advanced money upon them in good faith and without any knowledge of the fraudulent acts of Niles and the master.

The drafts did not themselves create a lien on the vessel. Unless the debt for which they were given bound the vessel, the drafts, notwithstanding what is expressed on their face, did not. If the owners owed Niles nothing under his contract with the master for the repairs and supplies which had been furnished, he had no lien on the vessel, which he or any one else could enforce in admiralty. For the purposes of this suit the libellants occupy no better position than Niles; and if he could not recover, they cannot. Having advanced their money in good faith, they may not be affected, so far as their remedies against the parties to the drafts are concerned, by the fraudulent character of the transactions between Niles and the master; but if the vessel owed Niles nothing, it does not owe them.

Now, we think it clear that if Niles were here as appellant instead of these libellants, he would not be entitled to the reversal of this decree upon the findings as they stand. The findings sent here under the act of 1875 furnish the only evidence of the facts which we can consider. It is incumbent on the libellants to prove a debt from the vessel to Niles, and its amount. Until this proof is made they cannot recover. If the settlement between the master and Niles had not been impeached, that would have been enough, for the master is the agent of the owner for all such purposes. But it has been impeached. The court has expressly found that, although insurance was charged for and allowed, none was ever effected; and that the commissions were calculated on an excessive valuation. It has also found that there was a corrupt understanding between the master and Niles, under which the master was given one of the drafts which he drew on his owners, as " his share." Under these circumstances it is clear that the approval of the

accounts by the master amounts to nothing as evidence of what was actually due, and without that there is nothing to show that Niles is entitled to anything. His advances were all paid by sales of the damaged cargo, and while there was $6,875 allowed him for commissions and insurance, the balance due to him on the accounts as stated was only $6,106.24. Thus it appears that in addition to his expenditures he must have received $768.76 on account of commissions. In the absence of anything to show what his services were reasonably worth, we cannot say from the findings that anything is honestly due Niles on his accounts.

It is insisted, however, that there was no evidence in the case to establish the corrupt understanding between Niles and the master, because a deposition bearing on that subject was ruled out in the Circuit Court.

It is true such a deposition was excluded, but without it there is abundant evidence in the testimony of Niles tending at least to support the finding. His account as stated by himself can be properly abstracted as follows : —

| | | |
|---|---:|---:|
| Bill of supplies. . . . . . . . . . . . . . . . . | | $216 27 |
| Labor, loading and unloading cargo, wharfage, &c. . . | | 1,832 38 |
| Paid captain for himself and crew . . . . . . . . . | | 768 14 |
| Sundry bills for repairs . . . . . . . . . . . . | | 2,582 93 |
| Total expenditures . . . . . . . . . . . . . . . | | 5,399 72 |
| Receipts from sale of damaged cargo . . . . . . . . | | 7,035 50 |
| Receipts over actual expenditures . . . . . . . . . | | $1,635 78 |
| Com's charged on bills of supplies . . . . . | $10 81 | |
|   ,,     ,,      labor, &c. . . . . | 91 63 | |
|   ,,     ,,     payments to master . . . | 38 41 | |
|   ,,     ,,     bills for repairs . . . . . | 129 15 | |
|   ,,     ,,     sale of cargo . . . . . . | 352 78 | |
|   ,,    2½ per cent on receiving, storing, and shipping cargo . . . . . . . . . . | 3,125 00 | |
| Storage, 2 per cent on valuation of cargo . . . | 2,500 00 | |
| Insurance, 1 per cent on valuation . . . . . | 1,250 00 | |
| Paid 2½ per cent discount on drafts. . . . . | 152 65 | |
| Com's for indorsing and negotiating . . . . | 91 59 | |
| | | 7,742 02 |
| Balance . . . . . . . . . . . . . . . . | | $6,106 24 |

The same witness also testified that the drafts were all drawn in the same form by the master on the owners to the order of Niles & Co., payable in New York at ten days' sight, and that the draft for $1,500 was indorsed by Niles & Co. and delivered to the master. The cargo consisted of hides, sheep-skins, kip-skins, horse and cow hair, and shin-bones, and the vessel was detained in St. Thomas about two months.

Without considering any of the other important and interesting questions which have been urged on our attention in the argument, we affirm the decree.

*Decree affirmed.*