## The Pride of America.

*(District Court. N. D. New York.   January, 1884.)*

MARITIME LIEN—DRAFT RECOGNIZING THE LIEN.
>    Where a maritime lien attaches to a vessel, and her owner gives a draft for the debt, the draft in terms recognizing, confirming, and continuing the lien, an assignee of the draft and claim can enforce the lien against the vessel.

In Admiralty.
*George N. Burt,* for intervenor.
*Webb & Benedict,* for owner.
COXE, J.   In September, 1881, the schooner Pride of America was lying in the harbor of Cheboygan, Michigan, in a disabled condition.

As it was not possible to proceed under sail, an agreement was made with the tug George W. Wood to tow her to Milwaukee for $700. The journey was safely accomplished and the master and owner of the schooner—James McDonnell—executed a draft for the amount. Indorsed thereon was a memorandum, signed by him as follows: "It is understood this draft takes the place of a receipted tow bill, and is good against the within-named vessel her owner and underwriters, until paid.". The draft was not paid. Its holder, who is also the assignee of the claim, now seeks to enforce his demand against the remnants in the registry of the court, the vessel having been heretofore sold upon a decree in favor of seamen. That the intervenor has a valid lien there can be little doubt. The vessel was bound to the owner of the tug, the towage contract was executed and the maritime lien fully established. *The Queen of the East,* 12 Fed. Rep. 165. The services rendered were meritorious and satisfactory. It must have been the intention of all concerned that the lien should be continued. It is hardly conceivable that the tug would have consented to release the vessel and give a credit of 60 days, upon any other terms. That a sane man would thus surrender ample security and take in lieu thereof the personal obligation of a stranger, an alien and a sailor, of whose responsibility he could know but little, is not within the limits of reasonable conjecture. The draft, with the indorsement, was given for a debt for which the vessel was liable, and it was given by her master and *owner.* The lien was not thereby divested, but continues till the draft is paid. *The Woodland,* 104 U. S. 180. It was the evident purpose of the owner in executing a negotiable instrument, that the lien should be recognized, confirmed, and continued, in the hands of all *bona fide* holders.

The reasons for the rule which discharges the lien in cases where there has been an assignment of claims for mariners' wages, etc., has little pertinency to the present inquiry. *The Norfolk and Union,* 2 Hughes, 123. Here the owner of the vessel to which the lien attached, in consideration of the credit given, expressly consented that the security should remain unimpaired. How can he now escape the consequences of his own act, especially when he is seeking to avoid the payment of a valid claim the justice of which he has repeatedly recognized? The court should not permit merely technical defenses to prevail against a meritorious claim. Such considerations may be entertained in aid of equity, but not to defeat it.

The intervenor is entitled to a decree for $700 and interest from December 5, 1881, besides costs. The commissioner's fees amounting to $18 should first be paid from the fund.