Franklin Woodruff et al., Respondents, *v.* Frederick C. Havemeyer et al., Appellants.

Defendants were the owners and consignees of certain cargoes of sugar which were transported to New York under bills of lading, by which the carrier agreed to carry them to that port "to be delivered within reach of the steamship's tackles" to defendants. This clause in each bill was followed by a provision giving the steamer the option to discharge cargo at New York or Brooklyn, the consignees to pay landing and wharfinger charges thereon, including storage, at specified rates. The vessels on which the sugar was shipped carried general cargoes, including other sugars. On reaching New York they stopped at the regular pier of the company and discharged part of their cargoes, and then under the option in the bills of lading proceeded to Brooklyn and landed the sugars upon plaintiffs' wharves in that city, and within twenty-four hours they were delivered. Defendants were ready with lighters to receive the sugars direct from the vessel and demanded such delivery. *Held* that plaintiffs were entitled to maintain an action to recover the landing and wharfinger's fees specified in the bills of lading: that the option contemplated, in case it was exercised, a delivery upon a wharf in Brooklyn, and defendants had no right to insist that the cargoes should be delivered from the side of the ship; also that the contract was enforceable by plaintiffs, as the receipt of the cargoes on their wharf was in legal effect a service rendered by plaintiffs upon employment of the carriers, duly authorized to contract for defendants for the service at the specified rates.

A bill of lading, in general, is binding upon and protects all persons who by means of or under it, become the owners or custodians of the goods.

Also, *held*, that the provision of the act of 1872 (§ 2, chap. 320 Laws of 1872), in relation to rates and wharfage, etc., in the cities of New York and Brooklyn, which authorizes a charge specified for goods remaining on a wharf for every day after the expiration of twenty-four hours from the time of landing, could not be construed as prohibiting the owner of a private wharf from contracting for the landing or deposit of goods upon his wharf on such terms as might be agreed upon, or as requiring him to store goods for any time without compensation.

(Submitted May 9, 1887; decided June 7, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made the second Monday of February, 1885, which affirmed a judgment in favor of plaintiffs, entered upon a verdict directed by the court and affirmed an order denying a motion for a new trial.

The plaintiffs were owners of certain wharves, piers and warehouses at the foot of Joralemon street, in the city of Brooklyn, within the port of New York, erected on land under water within the boundaries mentioned in chapter 156 of the Laws of 1848, and chapter 313 of the Laws of 1860. The defendants were owners and consignees of certain cargoes of sugar, imported from Havana by Ward's line of steamers between November, 1880, and November, 1882, which, upon the arrival of the vessels transporting the same, were landed by the carrier upon the plaintiffs' wharves, and were, within twenty-four hours thereafter, delivered by them to the defendants. The sugars were transported from Havana to New York under bills of lading, by which the carrier agreed to carry them from Havana to the port of New York, "to be there delivered, within reach of the steamship's tackles, unto Messrs. Havemeyer and Elder, or his or their assigns," upon payment by the consignees of the freight and primage specified. This primary clause in the bill of lading was followed by a provision, out of which, and the action of the carriers thereunder, arises the present controversy. That

provision is as follows: "It is expressly stipulated that the articles named in this bill of lading shall be at the risk of the owner, shipper or consignee thereof, as soon as delivered from the tackles of the steamer in the aforesaid port of New York (steamer has option of discharging cargo at New York or Brooklyn, consignees of cargo to pay charges thereon as expressed in the margin), and they shall be received by the consignee thereof, package by package, as so delivered," etc. In the margin of the respective bills of lading is this printed notation: "Landing and wharfinger's charges, including storage on wharf not exceeding six days, 17 cts. per hhd., 15 cts. per t'ce, 8 cts. per box and 4 cts. per bag, commencing immediately upon delivery from steamer." The vessels on which the sugars were shipped carried general cargoes, and on reaching New York stopped in the first instance at the regular pier of the company in New York, at the foot of Wall street, and there discharged light cargo other than sugar, and thence proceeded, under the option reserved in the bill of lading, to the wharves of the plaintiffs in Brooklyn, and there delivered the sugars. The defendants were ready with lighters to receive the sugars from the vessels, and demanded that they should be delivered directly into the lighters. They were, however, delivered upon the wharf, and not directly into the lighters, for the convenience of the steamers in sorting the defendants' sugars from other goods and sugars on the vessels, the cargoes in most cases including other sugas than the defendants. This action is brought to recover the landing and wharfinger's charges at the rate expressed in the bills of lading.

*John E. Parsons* for appellants. The bills of lading compelled the vessels to transport the sugar to the port of New York. They required them to deliver the sugar there, within reach of the vessel's tackles, to the consignees. (*N. Y. C. & H. R. R. Co.* v. *Stand. Oil Co.*, 20 Hun, 39; *Rowland* v. *Milla*, 2 Hilt. 150; *Goodwin* v. *B. & O. R. R. Co.*, 58 Barb. 195; *Redmond* v. *S. S. Co.*, 46 N. Y. 578.) Wharfage,

in the sense of compensation for the use by a vessel of a pier and for the right to discharge cargo, has always been recognized as the subject of legislation. (Acts of May 6, 1870, April 23, 1872; May 21, 1875; April 16, 1879; *Vanderbilt v. Adams*, 7 Cow. 349; *Com'rs of Pilots* v. *Clark*, 33 N. Y. 251; *Munn* v. *State of Ill.*, 4 Otto, 113; *Taylor* v. *Atlantic Ins. Co.*, 37 N. Y. 275.) And whether the sugar was delivered on a public or private wharf, the interests of commerce and public policy forbid such a construction of the clause in question as would compel the payment upon foreign consignments, under bills of lading executed abroad, of charges which were of no service to the cargo and were incurred against the protest of the consignees. (*Munn* v. *Illinois*, 94 U. S. 113, 127, 128.) The plaintiffs cannot recover the disputed charges. (*Pardee* v. *Treat*, 82 N. Y. 385; *Root* v. *Wright*, 84 id. 72; *Seward* v. *Huntington*, 94 id. 104; *Merrill* v. *Green*, 55 id. 270; *Simson* v. *Brown*, 68 id. 356.)

*Edward H. Hobbs* and *S. P. Nash* for respondents. The defendants are liable for the charges specified in, the bills of lading, notwithstanding the statute regulating wharfage. (Chap. 254, Laws of 1860; Chap. 320, Laws of 1872; Chap. 405, Laws of 1875; Chap. 315, Laws of 1877; *Munn* v. *Ill.*, 94 U. S., 127; *Pierpont Dock*, chap. 78, Laws of 1885; *Erie Basin Dock Co.*, chap. 165, Laws of 1864; *Commercial Warehousing Co.*, chap. 378, Laws of 1867; *N. Y. El. Co.*, chap. 826, Laws of 1868.) The wharves and piers in the city of New York are but public streets, and the only right of the lessee or owner is the privilege of collecting wharfage of the vessels making fast to them. (*Com'rs of Pilots* v. *Clark*, 35 N. Y. 251; *Taylor* v. *Atlantic Mut. Ins. Co.*, 37 id. 275) As goods lawfully landed upon a public wharf may encumber and obstruct it for an unreasonable time, the section of the statute allowing a charge upon the goods after twenty-four hours was passed to enable the owners of the wharf to compel the removal of the goods. (Story on Bailments, § 453a.) The statute in question has no application to the owner of a wharf

who has the right to use it for storage purposes, and who holds himself out as a warehouseman and wharfinger and renders services for and about the goods. ( *Wetmore* v. *At. W. Lead. Co.*, 37 Barb. 70; *Wetmore* v. *Brooklyn G. Co.*, 42 N. Y. 384.) A bill of lading is in general binding upon and protects all persons who, by means of it, become the owners or custodians of goods. ( *Whitworth* v. *E. R. Co.*, 87 N. Y. 413; *Morse* v. *Pesant*, 2 Keyes, 16; *S. C.*, 3 Abb. Ct. Abb. Dec. 321; *The Delaware*, 81 U. S. 579.) In the case of a general cargo the different consignments must be properly separated and during the time required for this purpose the carrier's risk continues. ( *The Eddy*, 72 U. S. 481.) But the carrier must limit this liability and provide that each parcel shall be at the risk of the consignee as soon as delivered from the ship's tackle; bills of lading containing such a limitation are binding upon the consignee. ( *The Santee*, 2 Benedict, 519; *S. C.*, 7 Blatch. 186.)

ANDREWS, J. The defense to this action on the merits, if it has any foundation, rests upon the assertion by the defendants of the right to disregard and repudiate their written contract contained in the bills of lading, to pay landing and wharfinger's fees at the rate specified in the margin of the bills, although the carriers exercised their option to discharge the sugars in Brooklyn. It is manifest that this defense cannot be maintained upon the ordinary and general rules applicable to contracts. The option reserved by the carrier to discharge the sugars in Brooklyn contemplated a delivery upon a wharf in case the option was exercised, as is shown by the notation in the margin of the bills. It is inferable from the agreed facts that the option was reserved by the carrier for their convenience in unloading and assorting cargo. At all events the shippers, by the bills of lading, assented to this mode of delivery, and they had no right to insist that, for their convenience, the sugars should be delivered from the side of the ship. The parties to the contract not only made a special agreement as to the mode of delivery, but they fixed by the same agree-

ment the amount which the shipper or consignee should pay for landing and wharfinger's charges in case the carriers elected to discharge the sugars in Brooklyn. It is plain that this agreement also was within the general competency of contracting parties and was binding upon the defendants, unless they are freed from liability to perform their contract upon some special ground. It is claimed that, assuming the contract was valid and enforceable between the carriers and the defendants, there was no privity between the plaintiffs and defendants which will support an action by the plaintiffs to recover the stipulated compensation. It is unnecessary to invoke the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268), in order to support the judgment below, and it is not important to consider whether the doctrine of that case is applicable. The plaintiffs came into possession of the sugars through a delivery by carriers duly authorized by the shippers and consignees to make delivery on such wharf in Brooklyn as the carriers might select, subject to the payment by the consignees of wharfinger's fees at a specified rate. The receipt of the cargo on the wharf was in legal effect a service rendered by the plaintiffs for the defendants, upon the employment of the carriers duly authorized to contract in behalf of the defendants for the service at the rates agreed upon in the bill of lading. The defendants were parties to the bills of lading. The plaintiffs received the goods under the terms expressed therein and thereby became entitled to enforce the contract made for the benefit of such wharfinger as should render the contemplated service. In general a bill of lading is binding upon and protects all persons who by means of or under it become the owners or custodians of the goods. (See *Whitworth* v. *Erie R. Co.*, 87 N. Y. 413; *Morse* v. *Pesant*, 2 Keyes, 16; *The Delaware*, 14 Wall. 579.)

But the defendants mainly rely for their defense upon the act (Chap. 320 of the Laws of 1873) entitled "An act to amend an act in relation to the rates of wharfage and to regulate piers, wharves, bulk-heads and slips in the cities of New

York and Brooklyn, passed May sixth, eighteen hundred and seventy." The first section of the act prescribes the rates of wharfage and dockage within the cities of New York and Brooklyn. "Wharfage" is a charge against a vessel for lying at a wharf, and is not a charge for caring for the goods. The plaintiffs are not seeking to recover wharfage, and the first section of the act has, therefore, no direct bearing upon the present controversy. But it is claimed that by the second section the defendants had the right to have the sugars remain on the plaintiffs' wharf for a period not exceeding twenty-four hours without charge. The second section is as follows: "It shall be lawful for the owners or lessees of any pier, wharf or bulk-head within the cities of New Nork and Brooklyn to charge and collect the sum of five cents per ton on all goods, merchandise and materials remaining on the pier, wharf or bulk-head owned or leased by him for every day after the expiration of twenty-four hours from the time such goods, merchandise and materials shall have been left or deposited on such pier, wharf or bulk-head, and the same shall be a lien thereon." It will be observed that the section does not in terms prohibit wharfingers from entering into special contracts for the use of their wharves for the storage or deposit of goods thereon during the first twenty-four hours. It simply declares it to be lawful for owners or lessees of wharves or piers to charge the rate specified upon goods remaining thereon · more than twenty-four hours. The public wharves in New York and Brooklyn are, in general, extensions of public streets, and the second section of the act may have been enacted for the protection of wharfingers on the public wharves against the annoyance and obstruction which might be occasioned by the accumulation of goods, merchandise and materials thereon, and to furnish a motive to the owner of property for its prompt removal. This view is quite consistent with the course of legislation and the decisions. But however this may be, we think the statute cannot be construed to prohibit the owner of a private wharf from entering into a contract for the landing and

deposit of goods upon his wharf upon such terms as may be agreed upon between himself and the owner of the goods, nor can it be construed as requiring him to store goods for any period of time without compensation. Assuming that such a regulation would be within the competency of the legislature, as to which we express no opinion, nevertheless the intention of the legislature to exercise such an exceptional power cannot be inferred from the language of the act of 1872. The act can have effect without imputing to the legislature the design attributed to it by the defendants. (See *Wetmore* v. *Brooklyn Gas-Light Co.*, 42 N. Y. 384.)

We think the plaintiffs were entitled to maintain the action and that the judgment should be affirmed.

All concur.

Judgment affirmed.