THE BROOKLYN.[1]

THE GLOUCESTER.

EMPIRE WAREHOUSE Co., Limited, *v.* THE BROOKLYN.

SAME *v.* THE GLOUCESTER.

*(District Court, S. D. New York. April 15, 1891.)*

WHARFINGERS—CONTRACT FOR DOCK PRIVILEGES—INCLUDES WHARFAGE CUSTOM.
 A contract by a wharfinger to furnish "dock privileges" for "the unloading of a cargo of iron from barges and for reloading and removing the cargo by trucks" from the wharf includes the wharfage charges for giving the vessel a berth alongside the wharf, as well as the charges for space on the dock occupied by cargo, and controls any custom to the contrary.

In Admiralty. Suits for wharfage.
*Frederick W. Hinrichs*, for libelant.
*Goodrich, Deady & Goodrich*, for respondents.

BROWN, J. The libels in the above two cases were filed to recover for "wharfage" at different times during the months of January, February, and March, 1890, while the above-named lighters were discharging at libelant's dock, at the Waverly stores, Brooklyn. The cases have been submitted upon an agreed statement of facts, from which it appears, in addition to the above, that both lighters were chartered by the claimants to A. & P. Roberts & Co., of Philadelphia, for carrying structural iron to said dock, and that the wharfage claimed in the libels was for the time during which they were engaged in unloading there; that the libelant had previously, by a written contract with Roberts & Co., "rented" to the latter "dock privileges at Waverly stores for the unloading from barges of elevated railroad structural iron, and for the reload-

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

ing and removing the same by trucks through said property, at the daily rental or sum of $5 for each and every day, beginning with the day on which the first of said iron was landed;" that the iron brought by these lighters was the iron referred to in said contract; and that Roberts & Co. had paid the libelants in full the stipulated price of five dollars per day for the whole period for which wharfage is now claimed against the lighters. The libelant contends that the "dock privileges" bargained for and paid for did not include any wharfage charge for the berthing of the vessel along-side the dock while unloading, but only the use of the dock in receiving the iron from the lighters and in reloading it on trucks and carting it away. The libelant reserves in the submission "the right to prove that, irrespective of the statute, it has been the general custom in the port of New York to charge for berthing the vessel, and also for rent for space occupied by the cargo on dock," if the court holds such evidence competent under objection. The lighters were both chartered by Roberts & Co., who unloaded the iron on their account. If the berthing of the vessel while unloading is included in the contract, as the contract price has been paid in full, there can be no lien on the vessel, since the vessel owes nothing that remains unpaid. *The Woodland*, 104 U. S. 181; *Woodruff* v. *Havemeyer*, 106 N. Y. 129, 12 N. E. Rep. 628. The charges for wharfage in this port are regulated by statute. Laws 1875, p. 482, c. 405. The exaction of any greater sum than allowed is made penal, (Laws 1879, p. 234, c. 168,) though this does not apply to keeping or storing cargo, (*Woodruff* v. *Havemeyer, supra.*) The terms "dockage" and "wharfage" are synonymous. They are used interchangeably, as the last cited statute shows. Wharfage or dockage is a charge for the use of a wharf or dock. It may accrue from the use of the dock in mooring for the purposes of protection and safety only. *The George E. Berry*, 25 Fed. Rep. 780. But in this port such a charge is ordinarily for the purpose of loading or unloading cargo on the dock, and that includes necessarily a berth for the vessel, and a place of deposit for the cargo. The statute recognizes this by making a difference in the rate chargeable while a vessel is lying along-side the wharf and unloading, and the rate chargeable while not unloading, but made fast outside of another vessel, the latter charge being only half the former. To prevent incumbrances upon the wharf and its use for storage purposes, the statute further authorizes a charge of five cents a ton per day for goods or materials left on the wharf more than 24 hours after the discharge is completed. These provisions, with the imposition of a penalty for exacting any greater sum than prescribed, clearly agree with immemorial practice, and show that the charge for "wharfage" when unloading includes the use of the dock for that purpose. No proof of custom could avail to reverse this evident statutory provision. The terms of this contract have the same import. What is granted is "dock privileges," both for "unloading from barges" and for "reloading and removal by trucks." There could be no unloading without a vessel to unload from, and that vessel must have her berth in order to unload. The "dock privileges for unloading," therefore, necessarily include the use of the perpendicu-

lar side of the dock as a berth for the vessel, as much as the use of the horizontal surface where her cargo is deposited. The libelant sues for the full prescribed wharfage rate, though Roberts & Co. have paid the contract price in full. If the libels were sustained, and the vessels obliged to pay these full rates, as that would include the use of the wharf as a place of deposit during discharge and up to 24 hours afterwards, all that would remain for the agreement to operate upon would be the use of the dock as a place for keeping the iron after the lapse of 24 hours. The language of the agreement is not consistent with such a construction. On the contrary, it expressly states that the five dollars per day is to begin to run from the day when the first of said iron is landed,—i. e., before the discharge is even completed. The terms of the agreement evidently import a stipulated price per day as a substitute for the statutory provisions, both for a berth while unloading and for the use of the wharf for more than 24 hours after the discharge, in case Roberts & Co. should find it desirable to use it longer. The custom alleged, if proved, would not change the meaning of the contract, nor the evident meaning of the statute. Libels dismissed, with costs.