### THE KAISER WILHELM II.

(Circuit Court of Appeals, Third Circuit. December 28, 1917.)

#### No. 2177.

1. ADMIRALTY ☞117—APPEAL—TRIAL DE NOVO.

On appeal in an admiralty case, the appellate court has authority to consider the case de novo.

2. EVIDENCE ☞46—JUDICIAL NOTICE—EXECUTIVE ORDERS.

The court will take judicial notice of an executive order, pursuant to resolution by Congress, whereby the President took over the possession and title of vessels within the jurisdiction of the United States, owned in whole or in part by corporations, citizens, or subjects of an enemy nation.

3. WAR ☞10(2)—EFFECT ON PRIOR LIBEL.

A British corporation filed a libel in the United States courts of admiralty against a vessel owned by a German corporation. By its answer, the German corporation admitted the admiralty jurisdiction of the court, the vessel being within a port of the United States, but contended that it could not be exercised, because the countries of both litigants were at war with each other, and that prior to the filing of the libel the Imperial Government of Germany issued a moratorium, whereby payment of all indebtedness by German to British subjects was forbidden during the war. On the contention that enforcement of the claim would compel a violation of the German moratorium, the libel was dismissed, and the libelant appealed. Meantime the United States declared a state of war to exist between itself and Germany, and, pursuant to joint resolution of Congress, the vessel libeled was seized by executive order. *Held* that, as the German vessel had sought protection in an American port and was enabled to do so through the very repairs made by libelant, and as such lien might be lost if the cause were dismissed, jurisdiction of the libel should be retained; this being particularly true in view of the seizure of the vessel by the United States, for if the lien were lost by dismissal of the libel, and the vessel were destroyed, the German corporation might still be liable for the payment of the repairs, and such payment could not be made out of the vessel.

4. WAR ☞10(2)—PROTECTING RIGHTS OF ABSENT GERMAN CITIZENS.

The courts will protect the rights of an absent German citizen while the United States is at war with the Imperial German Government, because of the innate sense of fairness, decency, and justice which respects the rights of an enemy, because of the broad principles of international intercourse, which lead courts and nations that believe in international rights to be the more careful to observe them toward belligerents, and because this is in line with the high ideals of Anglo-Saxon justice.

Appeal from the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

Libel by Harland & Wolff, Limited, against the steamship Kaiser Wilhelm II. From a decree dismissing the libel (230 Fed. 717), libelant appeals. Reversed, and libel reinstated, with directions.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham and Roscoe H. Hupper, both of New York City, and H. Alan Dawson, of Philadelphia, Pa., of counsel), for appellant.

J. D. Bedle, of New York City (Walter C. Noyes, of New York City, of counsel), for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge.   In this case, Harland & Wolff, Limited, a British corporation, filed a libel against the steamship Kaiser Wilhelm II, owned by the North German Lloyd, a German corporation, for repairs made to that vessel in libelant's shipyard in England. By its answer, the North German Lloyd admitted the admiralty jurisdiction of the court below in the premises, but contended such jurisdiction should not be exercised in the present instance, because the countries of both litigants were at war with each other, and that prior to the filing of this libel the Imperial Government of Germany issued a moratorium, whereby payment of all indebtedness by German to British subjects was forbidden during the war.   It was therefore contended that the present enforcement of this claim would compel such German subject to violate the law of its country, and thereby subject itself to pains and penalties.   To this answer the British libelant filed exceptions which, in substance, alleged that the facts set forth in the answer did not constitute a defense to the libel.   On hearing, the court, in an opinion reported at 230 Fed. 717, sustained the contention of the North German Lloyd and subsequently entered a decree dismissing the libel.   From such decree this appeal was taken.   But pending such appeal, and at the hearing in this court, the whole situation was changed by two facts: First, the existence of war between the United States and the Imperial Government of Germany; and, second, the libeled ship, the Kaiser Wilhelm II, was taken over by the United States government by the order in the margin.[1]

---

1 Executive Order.

Whereas, the following Joint Resolution adopted by Congress was approved by the President May 12, 1917:

"Joint Resolution authorizing the President to take over for the United States the possession and title of any vessel within its jurisdiction, which at the time of coming therein was owned in whole or in part by any corporation, citizen, or subject of any nation with which the United States may be at war, or was under register of any such nation, and for other purposes:

"Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, that the President be, and he is hereby authorized to take over to the United States the immediate possession and title of any vessel within the jurisdiction thereof, including the Canal Zone and all territories and insular possessions of the United States except the American Virgin Islands, which at the time of coming into such jurisdiction was owned in whole or in part by any corporation, citizen, or subject of any nation with which the United States may be at war when such vessel shall be taken, or was flying the flag of or was under register of any such nation or any political subdivision or municipality thereof;   and, through the United States Shipping Board, or any department or agency of the govern-

[1-3] This being an appeal in admiralty, this court has authority to consider the case de novo. Irvine v. Hesper, 122 U. S. 256, 7 Sup. Ct. 1177, 30 L. Ed. 1175. And, of course, it will also take judicial notice of the change of situation noted above. That the court below had jurisdiction of the subject-matter and of the parties, if it saw fit to exercise it, is assumed and the question before that court was therefore as to the propriety of exercising such jurisdiction. Manifestly, the exercise of jurisdiction by the courts of a neutral nation between citizens of belligerent powers is a delicate one, and in this case whatever course was followed there would be reasonable complaint by the unsuccessful litigant. For, while the German citizen could assert the enforcement of the claim compelled it to pay a debt its government had forbidden it to pay, the British citizen could with equal weight complain that the German vessel had sought protection in an American port, it was enabled to do so through the very repairs the libelant made, the libelant had a lien for such helpful repairs on such vessel, that such lien might be lost if the cause were dismissed, and that it would be an unneutral act if it were turned out of court. Bearing in mind the further fact that the Kaiser Wilhelm II, even if this case were dismissed, could not have gone to sea for fear of capture, and that retention of jurisdiction in no way hindered, and dismissal of the libel in no way furthered, the use of the vessel by its German owners, we are of opinion the court below should not have dismissed the libel and that its decree should be reversed.

Moreover, the two facts which have come to pass meanwhile, viz. the war with Germany and the taking over of the vessel by the United States government, give further support to this conclusion, for the action of the government, in taking over the libeled vessel, changed the practical effects of the decree prayed for, when the libel was filed, in that such decree is not now enforced against a German citizen, or its

ment, to operate, lease, charter, and equip such vessel in any service of the United States, or in any commerce, foreign or coastwise.

"Sec. 2. That the Secretary of the Navy be, and he is hereby, authorized and directed to appoint, subject to the approval of the President, a board of survey, whose duty it shall be to ascertain the actual value of the vessel, its equipment, appurtenances, and all property contained therein, at the time of its taking, and to make a written report of their findings to the Secretary of the Navy, who shall preserve such report with the records of his department. These findings shall be considered as competent evidence in all proceedings on any claim for compensation."

And whereas, the following vessels were, at the time of coming into the jurisdiction of the United States, owned in whole or in part by a corporation, citizen or subject of the empire of Germany, a nation with which the United States is now at war, or were flying the flag of or under the register of the Empire of Germany, or of a political subdivision or municipality thereof: The Kaiser Wilhelm II [and eighty-seven other named vessels].

It is therefore ordered that through the United States Shipping Board there be taken over to the United States the possession and title of the aforementioned vessels. The United States Shipping Board is further hereby authorized to repair, equip, and man the said vessels; to operate, lease, or charter the same in any service of the United States, or in any commerce, foreign or coastwise; and to do and perform any and all things that may be necessary to accomplish the purposes of the Joint Resolution above set forth.

property, but in substance and effect would be, if a decree were finally entered as hereafter noted, against a vessel held by the United States. This vessel now taken by the government as noted, may hereafter be lost, burned, or destroyed and if the lien be not finally enforced against her in this proceeding, or the hold of the court upon her be surrendered, it is manifest that the North German Lloyd might, after the war was ended, still remain liable to the libelant for the repairs on the ship, no matter what became of her. The practical effect, therefore, of our dismissing this libel, might eventually work a hardship to the North German Lloyd. So, also, the changed situation makes the British libelant's nation and our own allies in this war, and it might well be regarded as a well-nigh hostile act on the part of the United States District Court to refuse to exercise its jurisdiction in behalf of a British citizen. It is manifest the ship cannot now be returned to the German subject, just as it could not have been really returned to such owner for use at any time since the libel was filed. Therefore there is no practical reason why jurisdiction should be declined on the ground that retention was an unneutral act, when we were at peace with Germany, or is now an unjust act toward the citizen of a country with which we are at war. The fact that the ship has now been taken from the possession of the court by the government would not prevent the court from hereafter adjudicating the several rights of the parties litigant if possession of the ship should later be restored, or if the government saw fit hereafter and of its own accord to pay into court such amount as would satisfy this lien. It is apparent, therefore, that no harm can be done to the two litigants or to the government by the lower court retaining jurisdiction of the libel for the present. If, as is no doubt the case, the counsel for the German claimant cannot at this time properly procure proofs and present his client's case, the court can, and no doubt will, delay action until this can be done. On the other hand, retention of jurisdiction may afford a tribunal for hereafter deciding questions which might possibly arise growing out of the seizure of this and other vessels by the government, if the government should desire an adjudication by a court of last resort.

This case is exceptional in its situation, and calls for the exercise of that range of discretion which the broad powers of a court of admiralty enable it to exercise. Such broad powers and range of discretion are, in our judgment, fittingly exercised by an order which will make due provision for, first, giving the German citizen and belligerent an opportunity to litigate his rights if relations with his country are hereafter resumed; second providing for adjudging, if the government hereafter so desires, its rights and liabilities, if any, in taking over libeled property of the German subject; third, adjudging hereafter what effect the taking of this ship by the government had on the claim of the British lienor, and the further obligation of the German vessel owner as between themselves.

[4] In following this course, and protecting the unprotected rights of an absent German citizen while this country is at war with the Imperial Government of its country, we are impelled by three all-sufficient reasons: First, the innate sense of fairness, decency, and justice,

which respects the rights of an enemy; second, the broad principles of international intercourse, which leads courts and nations that believe in international rights, to be the more careful to observe them toward belligerents; and lastly, because the awarding to this German citizen, with whom our country is at war, the careful preservation until times of peace of its rights is in line with those high ideals of Anglo-Saxon justice which led the British courts years ago, in Re Boussmaker, 13 Vesey, 71, decided in 1806, to allow the claim of an alien enemy to be proved in time of war and the dividends held by the British court until peace. Indeed, the fact that our country is now at war with Germany is all the more reason why this court should most scrupulously award to this German citizen those international and equitable rights which no fair-minded people ever deny even to their enemies in times of war.

We are therefore of opinion the decree of the court below should be reversed, the libel reinstated, with leave to the court and parties to take further steps and proceedings in the case as are not at variance with the views above indicated, and that a certified copy of this opinion be furnished by the clerk to the State Department and the Department of Justice of the United States.