PITTSTOWN
v.
PLATTSBUGH.

OVERSEERS, &c. of PITTSTOWN *against* OVERSEERS, &c. of
PLATTSBURGH.

*The over-
seers of the
poor of the
town of Platts-
burgh, in the
county of (lin-
ton, obtained
an order of two
justices of that
county, adju-
dicating the
legal settle-
ment of a pau-
per to be in
Pittstown, in
the county of
Rensselaer, and
ordering his
removal thith-
er, and he was
accordingly
removed to
Pittstown.
The pauper
had no legal
settlement in
this state. The
overseers of
the poor of
Pittstown ap-
pealed to the
court of gene-
ral sessions of
the peace of
the county of
Clinton, who
quashed the or-
der of remov-
al : but the o-
verseers of the
poor of
the town of
Plattsburgh
refused to re-
move the pau-
per back to
Plattsburgh,
or provide for
him, and main-
tain him at
Pittstown, he
being sick and
unable to be
removed, and*
THIS was a special action on the case. The declaration
stated, that on the 8th of *August,* 1815; one *Elijah Briggs,*
a pauper, having no legal settlement in this state, and being
destitute of property, and wholly unable to support himself,
was residing in *Plattsburgh ;* that *Nichols* and *Palmer,* two
of the justices of the peace of the county of *Clinton,* upon
complaint made to them by the defendant *Morse* and one
*Burk,* then overseers of the town of *Plattsburgh,* that the
pauper not having any legal settlement in that town had
come to reside therein, and was likely to become a charge
to the town, did adjudge the complaint to be true, and did
likewise adjudge that the lawful settlement of the pauper
was in the town of *Pittstown,* in the county of *Rensselaer ;*
and made an order dated the 8th of *August,* 1815, di-
rected to any constable of the town of *Plattsburgh,* reciting
the complaint and their adjudication thereon, and ordering
the removal of the pauper to the town of *Peru,* thence to
the town of *Chesterfield,* and in like manner, by the nearest
and most convenient route, to the town of *Pittstown,* the
constable of which town was required to receive the pau-
per, and to carry and deliver him to the overseers of the
poor of *Pittstown,* who were required to receive the pauper,
and provide for him as an inhabitant of the town of *Pitts-
town.* And the plaintiffs aver, that from the day of the date
of the said order unto the time of the commencement of
this suit, they have been overseers of the poor of the town of
*Pittstown ;* that by virtue of the before mentioned order, the
said justices, the defendant *Moore,* and the said *Burk,* on

*he had subsequently to the reversal of the order been maintained by the overseers of Pittstown,
who brought an action on the case against the overseers of Plattsburgh to recover their expenses,
&c. and set forth the above facts in their declaration. Held, on a demurrer to a special plea
of the defendants that the action was maintainable, on the principle that a burthen had been unjust-
ly thrown upon Pittstown by the procurement of the overseers of the poor of Plattsburgh, and as the
pauper had no legal settlement in this state, it was their duty to ex- onerate the overseers of Pitts-
town from the burthen which they had cast upon them. But whether the plaintiffs and defendants
could sue or be sued in their private capacity for their own official acts, or those of their predeces-
sors ? Quære.*

the 26th of *October*, 1815, caused the pauper to be remov-
ed to *Pittstown* and delivered to the plaintiffs : that the plain-
tiffs received the pauper, and provided, and have continued
to provide for him, food, &c. from the time of their receiv-
ing him until the commencement of this suit : that believing
themselves aggrieved by the order, they appealed to the
next court of sessions of the county of *Clinton*, to be hold-
en on the second *Tuesday* of *May*, 1815, at *Plattsburgh*,
and that such proceedings were had thereon, that at that *May*
term of the said court, the order appealed from was ordered
to be quashed, and the defendants were ordered to pay to the
plaintiffs, twenty-five dollars costs, which order of the court
of sessions remains unreversed ; of all which proceedings
the defendants had notice : and that *Briggs*, from the time
of his removal from *Plattsburgh* until the time of the com-
mencement of this suit, has continued to be a pauper, hav-
ing no legal settlement in this state, and wholly destitute of
property, and unable to support himself. The plaintiffs
further averred, that from the time of delivering the pauper
to them, and until the time of the commencement of this
suit, he was and has continued to be so sick, lame, and in-
firm, that he could not be removed from *Pittstown* to *Platts-
burgh* or elsewhere, without endangering his life, and expo-
sing him to sudden death ; that the defendants were over-
seers of the poor of the town of *Plattsburgh* from the time
of quashing the order of removal until the time of the com-
mencement of this suit : and although the defendants, as
overseers of *Plattsburgh*, ought and were bound, within a
reasonable time after the determination of the appeal, and
quashing the order of removal, and after they had notice there-
of ; and although it was their duty, as such overseers, within
such reasonable time, either to remove the pauper from
*Pittstown*, or to take care of, relieve and maintain him during
his sickness and lameness ; and although a reasonable time
for that purpose had elapsed ; and although the defendants
on the 1st of *June*, 1816, and often afterwards, were request-
ed by the plaintiffs either to receive the pauper from *Pitts-
town*, or to take care of, relieve and maintain him during his
sickness and lameness ; yet that the defendants not regarding
their duty ; but craftily, subtlely and fraudulently intending

to injure the plaintiffs, and compel them to support the pau-
per, have refused and still do refuse to take care of, relieve
or maintain him, by means whereof the plaintiffs have been
unjustly, wrongfully and fraudulently injured, and compelled
and obliged to pay a large sum of money, to wit, the sum of
1,000 dollars, in and about the taking care of the pauper
and furnishing him with food, &c. and have been put to great
trouble and expense in endeavouring to cure his sickness and
lameness.

The defendants severed in their pleas, and pleaded re-
spectively, 1. Not guilty.   2. That the pauper was born in
*Pittstown*, and at the time of his removal, was legally settled
in the town of *Hoosick*, in the county of *Rensselaer*; with-
out this, that from the time of his removal from *Plattsburgh*,
until the time of the commencement of this suit, the said
*Briggs* was a pauper, having no legal settlement in this
state, and concluded to the country.

The plaintiffs demurred specially to the second plea of
the defendants, who joined in demurrer.

*Mitchill*, in support of the demurrer.   1. The plea is a
technical traverse, with an *absque hoc*.   It is radically bad.
It is double; stating two independent facts.  (3 *East*, 346.)
The *absque hoc*, which is the strongest negative, cannot be
followed by a negative.   It would amount to an affirmative.
(1 *Inst*. 126. a. 1 *Chitty Pl*. 576.)

Again; it contains new matter, and concludes to the
country, when it ought to conclude with a verification.
(1 *Saund*. 103. note. 1 *Salk*. 4. 1 *Burr*. 317. *Doug*. 91.
412. 2 *Johns. Rep.* 428.)

2. But it will be objected, that the declaration is bad.
In the case of *The Overseers of Tioga* v. *The Overseers of
Seneca*, (13 *Johns. Rep.* 380.) the court seemed inclined to
think that *assumpsit* would not lie on the implied promise
resulting from the legal or moral obligation on the part of
the town where the pauper was settled, to provide for, and
maintain him.   But Mr. J. *Spencer* observed, that whether
an *action on the case* could not be maintained by the Over-
seers of *S.*, against the Overseers of *T.*, would present a
different question, on which, however, he gave no opinion.

By the act, (1 *N. R. L.* 279. 284.) it became the peremptory duty of the town of *P.*, after the adjudication, to support the pauper. Here was a duty imposed by statute, which has been neglected, and the common law gives a remedy by an action on the case. In the case of the *Farmers' Turnpike Company* v. *Coventry*, (10 *Johns. Rep.* 389.) it was held, that though a penalty was given by the act for injuring or destroying the toll gates, yet the plaintiffs had an action of trespass, at common law, for the injury to their property.

*Conckling* and *Foot*, contra. 1. The plea is substantially good. It is admitted that the pauper had no settlement in this state. What ground was there, then, for this action ? Even if there was a ground of action, the statute has provided an adequate remedy. We state a fact inconsistent with the averment in the declaration, and then negative that fact with an *absque hoc.*

2. This is a special action on the case for a non-feasance ; and the plaintiffs must show the non-performance of some duty imposed on the defendants by law. The defendants were not bound to remove the pauper back to *Plattsburgh.* As to the sum awarded by the Sessions, for costs, prior to the adjudication, the statute provides a remedy. Can they maintain an action for expenses subsequent to the order ? The defendants have done no more than their duty. Admitting that the pauper had his settlement in *Pittstown*, the defendants ordered his removel to that town. This was not an illegal act, nor any violation of duty. The duty of the Overseers is, to give notice to the justices to inquire, who, thereupon, make the order. If the order was improper, or illegal, it was not the act of the Overseers ; nor are they responsible for it. If this action can be maintained, it may be brought against the *successors* of the Overseers at the time ; but that will not be pretended. The case of *Atkins* v. *Banwell*, (2 *East Rep.* 555.) which was cited in the case of *The Overseers of Tioga* v. *The Overseers of Seneca*, is in point, that this action will not lie ; and it was a stronger case, for it was brought against the town where the pauper was settled. It is true, that was an action of *as-*

*sumpsit;* but the form of the action can make no difference. The principle is the same. The law recognizes no obliga-' tion to pay, and of course gives no action. This suit was, probably, brought in consequence of the observation thrown out by Mr. J. *Spencer,* in the case in 13 *Johns. Rep.* 383. The 25th section of the act provides a remedy, and there is nothing shown which will entitle the plaintiffs to a reme-dy at common law.

*Van Vechten,* in reply, was stopped by the court.

*Per Curiam.* The plea was confessed to be bad; but the defendants insist that the declaration is bad; that therefore, is the point to be considered.

In the case of *the Overseers of the Poor of Tioga* v. *the Overseers of Seneca,* (13 *Johns. Rep.* 380.) we held that *assumpsit* would not lie in a case like the present, on the ground that it did not appear that the pauper was settled in the town from which he was removed. We waived any decision on the question, whether a moral obligation was suf-ficient to sustain the action, when there was no request to af-ford maintenance to the pauper. In that case, too, we fore-bore to express an opinion, whether a special action on the case could not be maintained for the expenses subsequent to the adjudication of the sessions, provided it should appear that the pauper had no legal settlement within the state. This case presents that question, for the plea being radical-ly bad, we are referred back to the declaration, and that states the fact, by proper averments, that the pauper had no settlement within the state.

The plaintiffs' case, then, is this; a pauper has been illegal-ly fixed upon them by the agency and instrumentality of the overseers of the poor of *Plattsburgh;* the order removing the pauper to *Pittstown* has been quashed; and the overseers of *Pittsown,* in consequence of the neglect of duty of the overseers of the poor of *Plattsburgh,* in not removing the pauper, or providing for him, have been subjected to heavy expenses in supporting the pauper. Upon full considera-tion, we are of opinion, that this action is maintainable, on the principle, that a burden has been unjustly been thrown upon *Pitts-*

*town*, by the procurement of the overseers of the poor of *Plattsburgh;* that the pauper having no legal settlement in this state, it was their duty to have exonerated *Pittstown* from the burden they had cast on them. Besides, it may be well doubted whether *Pittstown* could make an original order as to this pauper, for his removal to any other town ; but, at all events, they were not bound to do so. Whether the plaintiffs can sue, and whether the defendants are liable in their private capacity for their own official acts, or the acts of their predecessors, has not been made a question, and the court, therefore have not considered the point. The objection will be open to the defendants, if they see fit to make it ; at present, we express no opinion upon it.

There must be judgment for the plaintiff on the demurrer.

PLATT, J. I concur in opinion, that the special plea is defective ; but cannot agree with my brethren, that the plaintiffs are entitled to judgment ; because, I think, the *declaration* does not show a right of action.

The declaration states, in substance, the following facts, viz. that on the 1st of *August*, 1815, *Elijah Briggs* was removed, as a pauper, from *Plattsburgh* to *Pittstown*, on an order of two Justices of *Plattsburgh*, adjudging him to be legally settled in *Pittstown*. In *May*, 1816, the General Sessions of *Clinton* County, on appeal, quashed the order of removal ; and ordered the defendants, then being Overseers of the poor of *Plattsburgh*, to pay to the plaintiffs, then Overseers of *Pittstown*, 25 dollars, for their expenses and costs.

The declaration further avers, that the pauper had *no legal settlement in this state;* and has continued a charge upon the town of *Pittstown*, ever since he was so removed to that town, being sick and unable to bear transportation; that the defendants have continued to be Overseers of the poor of *Plattsburgh* ever since the said order of the sessions; that they had notice, and were requested by the plaintiffs to provide for the sick pauper ; but that the defendants have utterly neglected to provide for the pauper; whereby great charge and expense have fallen upon the plaintiffs, as Overseers of the poor of *Pittstown*.

The suit is not for the 25 dollars awarded by the sessions; but for neglecting to provide for the sick pauper, from the date of the order of the sessions till the commencement of this suit.

· Although the order of removal from *Plattsburgh* was erroneous, and has been regularly quashed by the sessions; yet, it is admitted, that the pauper was not legally settled in *Plattsburgh*; for the declaration expressly avers, that " *he had no legal settlement in this state.*"

The moral obligation, in such a case, is upon the Overseers of the poor of the town where the sick pauper happens to be. It is the misfortune of *Pittstown* to have such a pauper thrown upon it; but according to the plaintiffs' own showing, it would be an equal hardship upon the town of *Plattsburgh;* he having no settlement in either of those towns.

If it be said, that the pauper was imposed upon the town of *Pittstown,* by a wrongful order of the Justices of *Plattsburgh ;* I answer, first, that the defendants, as Overseers of the Poor of *Plattsburgh,* are innocent in regard to that order; and in no wise responsible for the mistake of the Justices who made it; and, secondly, that those Justices had jurisdiction of the subject; and for aught alleged, acted honestly, in their official order of removal; and, therefore, all ulterior expenses, after the order of Sessions (reversing the order of the Justices,) are *damnum absque injuria.*

In the case of *Crouse* v. *Mabbitt and Tripp,* (11 *Johns. Rep.* 167.) on *certiorari;* it appeared that *Mabbit and Tripp,* as Overseers of the Poor of the town of *Washington,* sued *Crouse,* for " that he, without any lawful authority, brought into the town of *Washington,* one *Wm. Brown* a pauper, having no settlement there, or within this state; that the pauper fell sick, and was supported by them as Overseers, &c. until the death of the pauper, and that the defendant well knew all those facts." The Justice gave judgment in favour of the Overseers of the poor; but this court reversed the judgment; saying " there is no principle of the common law on which the action can be maintained."

In the case of *Atkins, &c.* v. *Barnwell, &c.* (2 *East,* 504.) *Le Blanc,* Justice, said, " there is a moral as well as legal

obligation to maintain the pauper in his illness, in the parish where he was at the time."

Besides; I am not prepared to admit, that *Overseers of the Poor*, by our law, have the *capacity* of *suing or being sued*, in their *official and representative character*, except where they are specially authorized by statute; as in the three cases expressly provided for, in the 20th, 27th, and 31st sections of the "act for the settlement and relief of the poor." It is an attribute of a Corporation, which I incline to believe does not belong to the Overseers of the Poor, upon any principle of the *common law.*

On the latter point, I do not here think it necessary to say more. It was not touched on the argument; and although it is fairly presented upon the demurrer, it will still remain open to the counsel for the defendants, if they choose to have it more deliberately examined, upon a motion in arrest of judgment.

Judgment for the plaintiff.