DOWNES v. ELMIRA BRIDGE CO., Limited.

(Supreme Court, Appellate Division, Second Department. June 6, 1899.)

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF RISK.
Defendant was moving an iron girder on private property used for a dock, taking the usual precautions. The dock at this time, though in a torn-up condition, was used more or less by the public. Plaintiff was familiar with the dock and its condition, and could have taken another route home, but chose the way along the dock, though it necessitated

passing between the iron girder and a stone pile,—a space of about four feet. Workmen were openly engaged in moving the girder, and plaintiff, in passing between the girder and stone pile, was caught and injured. *Held*, that plaintiff assumed the risk, and is chargeable with contributory negligence.

2. SAME—CONDITION OF PREMISES—NOTICE.

Where a private dock used by the public as mere licensees is being repaired, such fact is sufficient notice of the dangerous condition of the premises, and no duty rests on the person in charge of the work to give affirmative notice to one on the premises by mere sufferance.

Appeal from trial term, Kings county.

Action for damages by William H. Downes against the Elmira Bridge Company, Limited. From a judgment on a verdict for the plaintiff and an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Frederick Collin, for appellant.

E. J. McCrossin, for respondent.

HATCH, J. The plaintiff was injured by having his leg caught between an iron girder, which the defendant was engaged in moving, and a pile of stone, and brings this action to recover damages therefor, insisting that the act of the defendant constituted a negligent violation of his rights, on account of which he is entitled to recover damages. While the record is somewhat voluminous, yet the essential facts from which the rights and liabilities of the parties are to be determined are in a very narrow compass. Such as are necessary to the disposition of this appeal are as follows: In June, 1896, the Brooklyn Wharf & Warehouse Company was the owner of certain property adjacent to the water front of the East river in the borough of Brooklyn. The wharf and the property adjacent were used in connection with piers for the purpose of unloading merchandise from vessels and the delivery of merchandise thereto for shipment. In normal condition, this property—wharf and piers—was used by the general public for the purpose of business usually carried on at such places. The property, however, was private, and the right of the public therein was as licensees. Wetmore v. Lead Co., 37 Barb. 70; Wetmore v. Light Co., 42 N. Y. 384. In this respect the character of the public right is somewhat different from that which obtained in the city of New York, where the docks partake of the character of a public street. Delaney v. Railroad Co., 78 Hun, 393, 29 N. Y. Supp. 226. In June, 1896, the wharf and warehouse company began the construction of a railroad terminus in its yard upon this property, embracing that portion of the same where the accident took place. In connection with such improvement, it entered into a contract with the defendant to construct and place thereon a steel float bridge, for the purpose of enabling it to take cars and freight from vessels lying at the wharf, and for the delivery of merchandise thereto. The contract for the construction of the terminus was let to one McLean, a contractor, and he entered upon the premises, tore up the dock

to a considerable extent, drove piling therein, placed building material thereon, consisting of iron rails, frogs, and a pile of broken stone, permanently interrupting the use of this portion of the dock by the general public. During the course of the work thereon the general public were excluded, and barriers were erected in the form of planks laid across barrels at either end of the space where the work of construction was being prosecuted. These planks and barrels were removed from time to time, sometimes by workmen engaged on the work, and sometimes by third persons who appropriated them to their own use, and carried them away, and the place was in fact more or less used by the public. The southerly side of the property upon which the improvement was made opened upon Montague street, a public thoroughfare. It extended northerly for a distance of at least 100 feet, and north from the last-named point the wharf was in part occupied by the wharf and warehouse company and a part was the property of other persons and corporations. In August, 1896, the defendant obtained permission from the wharf and warehouse company to unload upon this property the material necessary to be used in the construction of the bridge, and included in the material so unloaded was an iron girder weighing 36 tons. This girder was unloaded on August 16th, from a lighter, upon the property, and the process of removal to the place it was to occupy was immediately begun, and was continued during that day (Sunday), and also the next day. In its removal, rails, crowbars, jacks, winches, and other implements were required to be used. On Monday afternoon, at 4 o'clock, this girder lay across this property, one end being within two feet of the stores thereon located, and the other end separated from the stone pile placed thereon by the wharf and warehouse company by a distance of about four feet. Part of the girder was then resting upon rollers, and part was jacked up from eighteen inches to two feet. Tackle was attached to it, connecting with a winch, and a large party of workmen were engaged about it. The plaintiff was employed by the United States government as a weigher, and such had been his occupation during the whole time in which the improvement was being prosecuted. He was entirely familiar with the dock and its then present condition. His employment was in the Mediterranean Stores, lying some little distance north of this property. His day's work ceased at 4 o'clock in the afternoon. In order to reach his abode, he had the choice of two routes,—one through a passageway under the stores fronting on the open space of the docks, about 18 feet in width, leading to a public street. This was used by vehicles and pedestrians as often as necessity and occasion required. With this route the plaintiff was familiar. The evidence tended to establish that there was some danger in its use by pedestrians, on account of its narrow width, and the presence of trucks and other vehicles therein. The other route was along the dock, over the portion of the incumbered place, and passed where the iron girder lay, to Montague street. The plaintiff, on this Monday afternoon, was accompanied by three companions, engaged in the same occupation as himself. They passed along the

dock, and came to the place where the girder lay, near the stone pile. Two of his companions preceded him, and, as he was passing through the space between the girder and the stone pile, the men employed upon the girder moved the same, and the plaintiff was caught between the girder and the stone pile, and his leg was severely injured, necessitating the amputation of his foot.

The question submitted to the jury from which they might find the defendant negligent, while not entirely clear, seems to have embraced two propositions: Was it requisite that notice should be given that the girder was about to be moved, and was the manner of its movement careless? This brings us to a consideration of what the plaintiff's right was at this place, and to arrive at this we must consider the nature of the defendant's obligation to him. The defendant had the right to make use of the dock for the very purpose of doing what it was at the time engaged in doing. This being private property, and the condition of the dock being such as to indicate that the public right of use was interrupted, the obligation of the defendant was quite different from what it would have been had the work been prosecuted in a public street. In the latter case reasonable care is required to be observed, and, as this is to be determined by the surroundings, when the use is of a public place great precaution is necessary to meet the requirement; and, in the absence of notice of the particular danger to be encountered, the rule of res ipsa loquitur applies. Hogan v. Railway Co., 149 N. Y. 23, 43 N. E. 403; Reed v. McCord, 18 App. Div. 381, 46 N. Y. Supp. 407. In the former case the prosecution of the work is the exercise of a legal right; and while, under ordinary conditions, the plaintiff would be considered as being upon the dock under an implied invitation from the owner, and consequently entitled to protection, so far as the exercise of reasonable care by defendant would insure the same, yet the disarranged condition of the dock, and the character of the work being prosecuted thereon, exclude the implication of an invitation to the plaintiff to come thereon, and under such circumstances no duty was imposed to take affirmative steps to guard from danger persons who trespass thereon, or who are there by sufferance. Victory v. Baker, 67 N. Y. 366; Flannigan v. Glucose Co. (Sup.) 11 N. Y. Supp. 688; McAlpin v. Powell, 70 N. Y. 126. The plaintiff's right, therefore, was to be protected from wanton and willful injury. Beyond this the defendant owed him no obligation. Boyle v. Railroad Co., 39 Hun, 171, affirmed in 115 N. Y. 636, 21 N. E. 724. There is not even plausible pretext for saying that in anything which the defendant did it was guilty of a wanton act, or of a willful intent to inflict injury. It was required, by its contract with the wharf and warehouse company, to expedite the work with all dispatch, and there is not a scintilla of evidence which tends to establish that in the manner and method of the movement of the girder the defendant did not adopt the usual means and take the usual precautions for the prosecution of such work. It is not contended but that it was proper to place it upon the rollers, to jack it up, to move it with the winch, and to let it down so that it might

slide onto the rails prepared for that purpose, in precisely the manner adopted by the defendant at the time the injury was inflicted. There was therefore no reasonable basis upon which the court was authorized to submit, and the jury to find, that the defendant was guilty of negligence in anything which it did. The plaintiff was perfectly well informed of the surroundings. He knew of the torn-up condition of the dock; he saw, or ought to have seen, what was plainly visible, and what his companions saw; and he knew, or was chargeable with knowledge, that the girder, when he passed it, was liable to be moved at any time. It rested upon rollers, was raised up, and men stood about it, at work upon it. The plaintiff states: "There were plenty of men there near the girder. * * * I did not look to see if there were men about to move this girder before I ventured in there;" and, although he subsequently testified that he looked before going into the space, and did not see any one moving or about to move the girder, yet it is quite apparent that such condition was open and visible. His companion Fitzgerald testified to the condition as it was, and also stated: "I knew that it [the girder] was liable to be moved as quick as they could get it out of the way. I went in there, and took that chance." Other witnesses called by the plaintiff testified expressly to the condition of the girder, and the active efforts being made to move it at the time when the plaintiff attempted passage between it and the stone pile. It was in fact then being worked upon by the workmen, and it was intentionally moved by them at the time when it did move, and all who made any observation of the surroundings were immediately apprised that such was the purpose of those engaged about it. The plaintiff, therefore, when he entered this space, did what his companions did,—took the chance of going through without injury. He assumed the risk of the situation, and is clearly chargeable with negligence contributing to the injury, as he was aware of the surroundings, or ought to have been. The defendant could hardly have added to the plaintiff's knowledge of the conditions if it had informed him that the girder was about to be moved. The plaintiff, in what he did in passing through this space, took the chance of doing so safely. He failed, but for such failure the defendant is not responsible. Upon the practically undisputed testimony in the case, the court should have directed a verdict in favor of the defendant. It follows that the judgment should be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.