(59 App. Div. 83.)

### INDIA WHARF BREWING CO. v. BROOKLYN WHARF & WARE-HOUSE CO.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

1. WHARVES—DEEDS CONVEYING ADJACENT PROPERTY—CONSTRUCTION—WHARF NOT PUBLIC THOROUGHFARE—WHARF NOT INCLUDED.

Plaintiff owned certain property adjacent to a wharf on the East river, known as "India Wharf." The deed conveying the land to plaintiff's grantor described the premises as being "on the easterly side of India wharf," and known as certain lot numbers on a map therein referred to, and that the premises were to be held subject to "the right of way, in common with others," over the span between the described lots and the outside line of the dock. The grantee was given the right to lay railways from each of the lots, when stores were built thereon, to the outside line of the dock, and the grantors "reserved to themselves * * * the right to all dockage, as well as the entire control * * * of all their pier, docks," etc., and agreed to keep the same in good condition at their own expense. The India wharf was constructed under legislative authority, but not until after this conveyance to plaintiff's grantor was executed. Held that, the wharf not being a public thoroughfare, and the public having no right over the same, the deed did not convey the wharf, as the intent to exclude the same clearly appeared; and hence plaintiff was not entitled to enjoin the construction of a pier out from the wharf directly in front of its property.

2. SAME—EASEMENT OVER WHARF—BY PRESCRIPTION.

Plaintiff owned certain property adjacent to a wharf on the East river. The deed conveying the land to plaintiff's grantor from the owner of the dock gave a right in common with others over the wharf, and to lay railways from his property, when stores were built on the same, to the outer side of the wharf. For a number of years plaintiff used the wharf in loading and unloading vessels. Held, that plaintiff had not acquired an easement over the wharf, adverse to defendant's title, and hence could not restrain the construction of an abutting pier directly in front of its property, where the same was necessary for the business of the basin, and did not interfere with the rights acquired by plaintiff by its deed.

Appeal from special term, Kings county.

Bill by the India Wharf Brewing Company against the Brooklyn Wharf & Warehouse Company to restrain the construction of a pier. From a judgment in favor of the plaintiff, the defendant appeals. Reversed.

The following is a diagram showing the location of the property involved:

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, and SEWELL, JJ.

John M. Bowers (Latham G. Reed, on the brief), for appellant.
Henry Yonge, for respondent. .

HIRSCHBERG, J.   The plaintiff has secured a judgment perpet-ually enjoining the defendant from constructing an extension to pier 35 in the Atlantic Basin, in the borough of Brooklyn, which extension is designed to connect that pier with the shore at the India wharf. This judgment is based on a decision finding that on or about the 31st day of October, 1899, the defendant entered upon the slip or water way in the Atlantic Basin in front of and abutting the prop-erty of the plaintiff described in the complaint, and partially con-structed a pier in said slip or water way from the India wharf to pier 35, as shown on a diagram annexed to the decision, and intends, un-less restrained by order of the court, to continue and complete the construction of such pier; that such entry by the defendant, and par-tial construction of the pier, is unlawful and illegal; and that the same was done without the consent and against the will of the plain-tiff, and in violation of the rights of the plaintiff in the slip or water way. .

It appears, by the diagram referred to and other maps and dia-grams in evidence, that the Atlantic Basin is formed by two piers, known, respectively, as the "North Pier" and the "South Pier," run-ning easterly and westerly, and which shut out the waters of the har-bor, excepting at the opening between the piers.   Within the basin so formed, and surrounding it, are India wharf, at the easterly or shore end of the North pier and running northerly and southerly, Clinton wharf, at the westerly or shore end of the South pier and run-ning northerly and southerly, and Commercial wharf, formerly Con-over street, running easterly and westerly and connecting the two other wharves.   The plaintiff's property abuts the India wharf.   Two parallel piers in the basin have been constructed,—one known as "No. 34," which commences at the wharf in front of, but at the extreme northerly end of, plaintiff's property, and juts out a considerable dis-tance in the water, and the other known as "No. 35," which does not commence at the wharf, but some 150 feet distant, opposite the cen-ter of plaintiff's property, and thence extending into the basin, and connected with pier No. 34 at the easterly end of pier No. 34, being the end nearest the India wharf, and, as I have said, 150 feet from it. The improvement contemplated by the defendant, now enjoined, con-sists in the removal of this connecting band and the continuance of pier 35 through the water of the basin to the India wharf, so that, when completed, there will be two disconnected parallel piers run-ning out from India wharf, about 130 feet apart, instead of, as now, so connected as to leave the water open in front of the wharf, be-tween the wharf and what I have called the connecting band.   The practical difference effected by the proposed change will be that, whereas there is now a wharf over 400 feet in width in front of the plaintiff's property, alongside of which boats can lie, this will be broken in two by the pier extension, leaving about 200 feet of wharf

front on one side of pier 35 and about 130 feet on the other. The difference is of material value to the plaintiff, and fully justifies the interference of the court, if its accomplishment involves the infringement of plaintiff's rights.

The India wharf was formerly 50 feet in depth,—that is, from its easterly side to the water; but this has been reduced by convention and conveyance to 40 feet. In the complaint the plaintiff alleges title in fee to its property by descriptions which locate it easterly of the easterly line of India wharf, and as bounded by and along such easterly line; but it alleges, in addition, that it is, and has been for many years past, the owner in fee and in possession of the India wharf itself, and of the abutting lands under water. In addition to the fee so claimed, the plaintiff claims in the complaint to be seized and possessed of a "dominant easement, pertinent to the said premises," to have the slip and wharf kept open and used, for the purpose of a water way, for the approach, dispatch, loading, and unloading of vessels, with the right of unimpeded passage through the basin and unimpeded access to the premises. The title of both plaintiff and defendant is derived from a common grantor, the Atlantic Dock Company, incorporated by chapter 215, Laws 1840. The plaintiff's property was conveyed by that company to Nathaniel Griswold in two deeds; one dated July 30, 1842, and the other November 24, 1842. The first deed covered all the lots adjoining, and easterly of, the India wharf, the entire front from Conover street, to the North pier. The second deed covered adjoining lots lying easterly of those first conveyed. The first conveyance is the only one directly bearing on the rights or claims under consideration. It describes the property as:

"All and singular these certain twenty-five lots, pieces, or parcels of ground situate, lying, and being in the Sixth ward of the city of Brooklyn, being respectively adjoining each other on the easterly side of India wharf, of the property of the parties of the first part, and known and distinguished as lots numbers  *  *  *  on a certain map of the said parties of the first part, inscribed 'Map of Property in the 6th Ward of the City of Brooklyn, Port of New York, belonging to the Atlantic Dock Company, surveyed September, 1841, by Willard Day, City Surveyor,'  *  *  *  which said twenty-five lots compose all the lots lying on the easterly side of the said India wharf; and for the precise locality of each of the said lots reference is hereby made to the said map, which map is filed in the office of the clerk of the county of Kings."

The deed contains the following habendum:

"To have and to hold the above granted, bargained, and described premises, with the appurtenances, unto the said party of the second part, his heirs and assigns, to his and their own proper use, benefit, and behoof, forever, subject, however, to the right of way in common with others over the streets or space between the said lots and the outside line or face of the dock on the Basin side of said lots, which street or space is fifty feet wide as laid down on their said map; and the grant and conveyance hereby made are made upon the express condition that when the said party of the second part, his heirs, executors, administrators, and assigns, shall erect and build a store or warehouse on any one or more of said lots, that the first or ground floor of the same shall be raised or carried up to five feet above ordinary level of high-water mark or line, and that the owner or owners of any such store or warehouse, when erected, shall have the right of laying down railways from each of the said lots to the outside line of said dock in such manner as will admit carts and carriages to pass over them with convenience and so as not to obstruct the passageway."

Then follow minute requirements as to the size, height, number of stories, height of respective stories, character, design, strength, and quality of material of the stores and warehouses to be erected, followed by this clause:

"The owner or owners of any such store or warehouse, when erected, shall have the right of laying down railways from each the said pier lots to the outside line of said pier or dock in such manner as will admit carts and carriages to pass over them with convenience, and so as not to obstruct the passageway. When any such store or warehouse shall have been built as aforesaid on any of said lots, the same shall not be used or occupied by any owner or occupant for the purpose of carrying on any distillery, brewery, oil factory, glass factory, fur factory, gas works, slaughter house, smith shop, carpenter or machine shops, foundry, or any other manufactory or branch of business which shall be deemed a nuisance. The said parties of the first part reserve to themselves, their successors or assigns, the right to all dockage or wharfage, as well as the entire control, interest, and income of all their piers, docks, bulkheads, and basin, and hereby obligate and bind themselves, their successors or assigns, to keep the said piers, docks, and bulkheads in repair at their own proper cost and expense, and to grade the said lots up to two feet above ordinary high-water mark or line."

On the 29th day of December, 1847, the Atlantic Dock Company conveyed to the executors of Griswold, by deed containing covenants of title in the grantor, the strip about 10 feet in width across and along the easterly side of India wharf, thus reducing the wharf to its present depth or width as a "street or space" of 40 feet. On August 23, 1889, said Atlantic Dock Company released the Indian Wharf Storage Company, predecessor in interest and title of the plaintiff, from the restriction as to the erection and maintenance of a brewery, under terms and conditions not material to the inquiry. In this release the lots now belonging to the plaintiff are referred to as "certain lots of land, fronting on India wharf, at the Atlantic Basin, in the city of Brooklyn," and the strip referred to as "a certain strip or parcel of land ten feet in width of and from said India wharf in front of and adjoining the said lots." The plaintiff put in evidence an indenture or agreement, made on the 1st day of June, 1848, by the Atlantic Dock Company, as party of the first part, with one Conklin Brush, for his benefit and that of the others to whom the company had sold lots fronting on the Atlantic Basin, and all others to whom it might thereafter sell lots, to the effect:

"That the rates of wharfage and dockage to be charged by the said parties of the first part for the use of said basin and surrounding piers and wharves shall not exceed the customary rates of dockage and wharfage charged in New York and Brooklyn, and that they will excavate said basin and keep the said piers and wharves in good repair as hereinafter mentioned; * * * it being expressly understood that the said parties of the first part reserve the full right and authority at all times to prevent merchandise and other articles from remaining an unreasonable time on said wharves after being landed, or from unnecessarily obstructing the free passage over and along the same, and, further, that the said parties of the first part shall and will, within four years from the date of these presents, excavate to the depth of low water by 16 feet on Commercial wharf, of 20 feet on the South pier, and of 25 feet on the North pier, with a gradual ascent from said pier to said Commercial wharf, the whole of said basin south of a line drawn parallel with India wharf, and distant 300 feet southwardly therefrom, and that they will also at all times maintain said depth and keep said basin and surrounding piers and wharves in good repair."

At the time of the deeds to Griswold the basin itself had not been constructed. It was admitted that the basin was erected, and the piers which formed it were built, between 1842 and 1845. These, with the three wharves heretofore mentioned, constituted the "surrounding piers and wharves" referred to in the document last quoted from. The India wharf was not built until 1845. Since then the Atlantic Dock Company or its successors have built four central piers in the basin; Nos. 34 and 35 reaching from India wharf on the easterly side of the basin, and two similar piers, Nos. 36 and 37, reaching from Clinton wharf, the westerly side of the basin. The two last named were originally constructed with a connecting link, only one of them abutting against the wharf and the link was afterwards removed, and direct connection established. The precise dates of the erection of these central piers do not appear. The president of the plaintiff company testified that Nos. 34 and 35 were constructed after 1886. He was officially connected with the India Wharf Storage Company at the time, and further testified that those piers were built with the knowledge of, and without protest from, that company. Nor does it appear that at any time prior to the commencement of this action the Atlantic Dock Company, or the defendant as its successor, was opposed by the owners and occupants of the property surrounding the basin in its acts of ownership and control as exercised in building piers, collecting dockage, and generally managing the business of the wharves, piers, and basin. By the act incorporating the Atlantic Dock Company the incorporation was declared to be—

"For the purpose of erecting, building, and maintaining docks, bulkheads, piers, basins, dry docks, foundries, and warehouses, for commercial uses, in the Sixth ward, in the city of Brooklyn, in the county of Kings, and within the line established by law, for the erection of docks and bulkheads, and to receive reasonable dockage and wharfage from all persons using the same."

The Atlantic Dock Company conveyed to the defendant, a corporation created for the like purpose, all its property, rights, and interests in the premises, including the basin, wharves, piers, and privileges, in ample terms, by deed dated January 28, 1895.

By chapter 484 of the Laws of 1836, the legislature conferred upon several individuals, including the grantors of the Atlantic Dock Company, and their heirs and assigns, the right "to erect, construct, and maintain one or more wharves, docks, bulkheads, and piers, on the land under water in front of their lands in the city of Brooklyn; but such docks, wharves and bulkheads shall not extend into the East river beyond" a line fixed and designated by the act. In 1841 the Atlantic Dock Company had acquired by various conveyances the fee to all the lands in question in this action, including the lands under the water in front of the premises, and all water rights appertaining to the same; and thereafter, by chapter 268 of the Laws of 1841, the legislature amended the act of 1836 by enacting that:

"It shall be lawful for the present owners of all the land lying along high-water mark, from the foot of Butler street, on the East river, to Red Hook Point, and their heirs and assigns, to erect, construct, and maintain one or more wharves, docks, bulkheads, and piers on the land under water in front of the exterior line provided in and by the act hereby amended, and extending

as far out in the East river as the following line; that is to say, [a line beyond the piers which mark the river boundary of the Atlantic Basin.]"

Streets had been laid out upon the premises in question, and designated upon the commissioners' map; but the use of the property for that purpose was discontinued by chapter 248 of the Laws of 1846, and the owner's right confirmed to—

"Sell, convey, build upon, or otherwise improve and use the lands * * * in the same manner and with the like effect as if the same had never been laid down and designated upon the said map as public streets."

In Wetmore v. Gaslight Co., 42 N. Y. 384, the court of appeals held that the public have no right to use wharves erected by the owners of land adjacent to the navigable waters of the East river, within the permanent water line of the city of Brooklyn, notwithstanding such wharves extend beyond low-water mark and were erected without the consent of the state. If the erection of such structures without legislative consent was void, the violation affected the right of the state alone, and not of any individual. Said Judge Grover (page 391):

"These structures were wholly within the water line of the city of Brooklyn, as established by the legislature in 1836. Laws 1836, c. 484. The defendant showed a perfect title to the upland to high-water mark, adjacent to the wharf, and also to the land between high and low water mark. The public never had any right of landing upon these lands of the defendant, or of crossing or in any way using the same for any purpose. The public right upon the Brooklyn side was confined to that of navigating the river."

In Downes v. Bridge Co., 41 App. Div. 339, 340, 58 N. Y. Supp. 628, this court said, per Hatch, J., of the lands and wharves of the defendant herein:

"In June, 1896, the Brooklyn Wharf & Warehouse Company was the owner of certain property adjacent to the water front of the East river, in the borough of Brooklyn. The wharf and the property adjacent were used, in connection with piers, for the purpose of unloading merchandise from vessels and the delivery of merchandise thereto for shipment. In normal condition this property, wharf, and piers was used by the general public for the purpose of the business usually carried on at such places. The property, however, was private, and the right of the public therein was as licensees. Wetmore v. White-Lead Co., 37 Barb. 70; Same v. Gaslight Co., 42 N. Y. 384. In this respect the character of the public right is somewhat different from that which obtained in the city of New York, where the docks partake of the character of a public street. Delaney v. Railroad Co., 78 Hun, 393, 29 N. Y. Supp. 226."

The docks in question, as has been seen by the acts cited, have been built with legislative sanction, and the defendant has such sanction for their proper and necessary extension, unless in some way the right has been lost by the course of dealing with the plaintiff and its grantors. Indeed the learned counsel for the plaintiff concedes in his brief "that up to 1842 the Atlantic Dock Company had the right to fill up out to the exterior line every part of the Atlantic Basin"; but he claims that under the deed to Griswold the latter became seised of the fee in India wharf, "and of any title then possessed or subsequently acquired by the Atlantic Dock Company to the lands under water in the basin adjoining said wharf." The soundness of this claim measures and determines the plaintiff's right to maintain the judgment appealed from.

The deed to Griswold does not convey the fee of India wharf.  It is unnecessary to analyze, or refer to in detail, the many cases cited relating to the conditions under which the fee of property sold has been held to extend to the center of a street, highway, or stream, or even to include the whole, as in every instance the result is reached by the ascertainment of the object and intent of the conveyance, as indicated by its terms.  In the early case of Jackson v. Hathaway, 15 Johns. 447, it was held that a conveyance by metes and bounds which did not take in the highway carried with it the fee to no part of the road, although the rule was acknowledged that where property is bounded "along a highway, or upon a highway, or running to a highway, there is reason to intend that the parties meant the middle of the highway; but in this case the terms of the description necessarily exclude the highway."

In Haberman v. Baker, 128 N. Y. 253, 28 N. E. 370, 13 L. R. A. 611, Judge Gray said (page 258, 128 N. Y., and page 371, 28 N. E.):

"Where the highway divides two properties, the owner of each abutting piece is presumed to own to the center of the way.  The presumption is based on the idea that the adjacent owners originally contributed the land for the road, and this presumption assumes that nothing militates against it in the facts of ownership.  But if the grant of the abutting property went only to the side of the road, or the public authorities are vested with the right to the soil of the street, the presumption cannot exist.  Dunham v. Williams, 37 N. Y. 251."

In the case of a marginal road wholly upon the grantor's land, a conveyance of all the land would carry with it the entire road, in the absence of evidence of a contrary intention, because, "as to the grantor, the control and beneficial use of the road have ceased to be of importance, but to the grantee they must be important, if not essential, for many patent reasons."

In the headnote to Mott v. Mott, 68 N. Y. 246, the true rule is satisfactorily expressed, viz.:

"The question whether, where lands are granted bounded upon a highway or stream not navigable, the title passes to the center of the highway or stream, is one of intent; and while the presumption is of an intent to pass the title, which will prevail unless by the terms of the grant or by necessary implication the highway or stream is excluded, yet the intent is to be gathered from the description of the premises, in connection with the other parts of the grant, and by reference to the situation of the lands and the condition and relation of the parties to the lands conveyed and to other lands in the vicinity; and, if an intent to exclude the highway or stream appears from the terms of the grant, as interpreted and illustrated by the surrounding circumstances, the title does not pass."

I find no difficulty whatever in ascertaining from the Griswold deed an intention to exclude from the grant the conveyance of the India wharf, not then constructed, but which the grantor was afterwards to construct at its own expense.  The property conveyed was certain lots "lying on the easterly side" of the wharf; reference being made to a map on file "for the precise locality" of the lots, and which, when examined, shows that the lots take in no portion of the wharf.  Moreover, the grantor expressly reserves to itself and its successors or assigns the entire interest in the wharf, as well as the entire control

and income, thus negativing every presumption that the description was intended to include the wharf, were such presumption at all possible; and it is especially significant that in this reservation the property reserved is referred to as "their"—the grantors'—piers, docks, bulkhead, and basin. It is true the conveyance is made "subject" to a right of way in common with others over the space where the wharf is to be constructed; but the effect is no greater than if the language had been, "together with a right of way," instead of subject to it. The rights which Griswold obtained in the wharf are very carefully measured in the deed. He acquired the fee of the lots, a right of way upon the wharf in common with others, and the privilege when stores should be built of laying railways from the lots to the water's brink; but the dock company reserved the wharves, first, by not deeding them, and, secondly, by reserving the entire control, interest, and income in and of them, coupled with the right to collect dockage and wharfage, and a perpetual obligation to keep them in repair at its own proper cost and expense. The documents in the case all tend to establish that they were reserved for explicit purposes of trade and commerce, to which ownership is a valuable, if not a necessary, incident. The situation is very different from that found by Judge Gray in Haberman v. Baker, supra, where the control and beneficial use of the road have ceased to be of importance to the grantor. It would require very clear and precise words of grant to indicate an intention to part with the title to property not yet in existence, but which the grantor binds himself to build at his own expense, to keep forever in good order under the like charge, and to the end that he may enjoy the beneficial uses which may be incident to the entire control of the property, the entire interest therein, and the entire income to flow therefrom; and especially is this so when in the grant he alludes to such property as still his own.

If the plaintiff has no title to the wharf, the judgment cannot be sustained on the theory of any easement acquired by prescription. The case is barren of evidence of the acquisition of any easement as lot owner adversely to the defendant's title. Undoubtedly the plaintiff and its grantors have used the wharf in loading and unloading vessels, paying to the defendant its charges for dockage and wharfage, and the improvement contemplated in no way involves a future deprivation of the privilege. There is no proof that the wharf will not be abundantly adequate to accommodate the reasonable requirements of the plaintiff's business after pier 35 is extended, or that there will not be sufficient room to berth any boat likely to come there. The service which the plaintiff has a right to exact of the defendant in connection with the Atlantic Basin and the extent of the plaintiff's right to the use of the waters of that basin and to navigate the same with access unimpeded to and from the channel of the river are not now the subject of investigation. All that is decided is that the plaintiff is not the owner of the wharf, and that it has acquired no prescriptive right to prevent the defendant from constructing such a pier as the legitimate business of the basin demands, and which can be constructed without interference with the rights expressly granted to

the plaintiff or necessarily implied from the manifest purposes of the grant and the contractual and other relations of the parties.

The judgment should be reversed, and new trial granted; costs to abide the final award of costs. All concur.