New York Dock Company, Appellant, *v.* India Wharf Brewing Company, Respondent.

Second Department, June 12, 1908.

**Deed — grant of right of way — use of private wharf.**

A deed from a dock company whereby it conveyed certain lots on the easterly side of and abutting on its dock " subject, however, to the right of way in common with others over the street or space between the said lots and the outside line or face of the dock on the basin side of said lots," is equivalent to a grant of the lots together with the right of way over the abutting wharf which the grantees or their assigns are entitled to use without payment of toll to the dock company.

The fact that in the deed the grantor reserved to itself the " entire control, interest and income of all  *  *  *  piers, docks, bulkheads and basin " does not make the grantee's lots liable to contribute to that income by the payment of charges for transporting goods, loaded directly from a vessel to trucks, and drawn across the dock, although the same had been much improved since the date of the deed.

Claims by a dock company for the transporting of goods across its wharf are not claims for wharfage.

Appeal by the plaintiff, the New York Dock Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 21st day of October, 1907, upon the report of a referee dismissing the complaint upon the merits.

*Charles E. Hotchkiss*, for the appellant.

*Lorenzo D. Armstrong*, for the respondent.

Judgment affirmed, with costs, on the opinion of the referee.

Woodward, Hooker, Gaynor, Rich and Miller, JJ., concurred.

The following is the opinion of the referee :

Odell, Referee :

Many of the material facts of this case are very clearly stated in the opinion of the court in *India Wharf Brewing Co.* v. *Brooklyn Wharf Co.* (59 App. Div. 83). The present defendant was the

plaintiff in that case, and the present plaintiff is the successor of the defendant in that case and the owner of all of its franchises and properties, including Hamilton wharf, which is the "India wharf" mentioned in the case referred to. This wharf is private property, and the right of the public therein is as licensees. (*Downes* v. *Elmira Bridge Co.*, 41 App. Div. 340.)

The complaint sets forth three causes of action. Taken together and as originally stated, they charge that between the 31st of December, 1898, and the commencement of the suit, the defendant "left, placed or deposited or caused to be left, placed or deposited, certain goods, merchandise and materials belonging to or consigned to it, or in its possession, custody or control, upon said India (Hamilton) wharf, in the amounts and quantities and of the weights and at the particular times and from the barges, boats and other craft and vessels as specified and set forth" in schedules annexed to the complaint. Two of these alleged causes of action the plaintiff holds by assignment from prior owners or occupants of the said wharf. The plaintiff and its assignors are described as wharfingers and warehousemen, operating as such the wharf in question, and the claims in suit as described in the original complaint are for the "use" of the wharf by the defendant in placing and depositing upon it the goods and materials above referred to. At the close of the trial the complaint was amended, on the plaintiff's motion, by inserting in the 4th, 13th and 21st paragraphs thereof, after the allegations relating to the deposit of said goods, the words "and transported the said goods, merchandise and materials over said India (Hamilton) Wharf."

The corporate powers possessed by the plaintiff are those which were formerly possessed by the Brooklyn Wharf and Warehouse Company, which was organized for the purpose of carrying on "the business of storage, wharfage, warehousing and forwarding, and the doing of each and every act or acts, thing or things, incidental to or growing out of or connected with said business" — including the owning and maintaining of docks, bulkheads, piers, basins and warehouses, the storage of goods, the storage and docking of all kinds of water craft, the loading and unloading thereof — "the collection and receipt of dockage, wharfage and storage dues and other compensation," and various other purposes.

It is agreed and admitted that during the period covered by the claims in suit vessels of various descriptions entered the plaintiff's basin and were moored to or alongside of the India or Hamilton wharf, upon which the defendant's property abutted, for the purpose of discharging so much of their cargoes as was consigned to the defendant, and that the goods mentioned in the schedules attached to the complaint were discharged "from said vessels and received by the defendant." It is also agreed and admitted that the manner of receiving the said goods, wares and merchandise by the defendant was as follows:

"A truck, drawn in some instances by men and in others by a horse, was taken from the premises of the defendant by the defendant's servants and employees, over the surface of the said India or Hamilton Wharf to the outside line or face thereof, at the point where said vessel was moored. The said goods, wares and merchandise were thereupon taken by the employees of the defendant from the hold of the vessel and placed directly upon said truck. As soon as said truck was loaded it was again drawn over the surface of said wharf from the outside line or face thereof to the defendant's premises. None of said trucks stood continuously upon the said wharf for a period exceeding twenty-four hours or for any longer time than was conveniently necessary for the said truck to be loaded and withdrawn as aforesaid. The wheels of the said truck did not run upon tracks, but rested directly upon the surface of the said wharf."

It is further agreed and admitted that "none of the said goods, wares or merchandise were placed directly upon said India Wharf by the defendant, its agents, servants or employees, or left to remain there for any length of time other than as they were placed upon the said truck belonging to the defendant as above set forth," and that every vessel moored to the wharf for the purpose of discharging cargo paid to the plaintiff or its predecessors in title its statutory charges for such mooring, computed on the tonnage of the vessel, which charges the plaintiff and its predecessors were entitled to make and collect.

Much has been said in the arguments of the learned counsel about the wharfage rights of the plaintiff and the statutory or other rules by which they are controlled or regulated. The claims in suit are

not claims for wharfage. Wharfage is defined to be "a charge against a vessel for lying at a wharf, and * * * not a charge for caring for the goods." (*Woodruff* v. *Havemeyer*, 106 N. Y. 135.) The learned counsel for the plaintiff says that the charge which he is seeking to enforce is "solely a charge against the consignee of goods for the use of the plaintiff's wharf in transporting such goods from the water edge to its own property." The defendant insists that when a vessel pays wharfage for the privilege of discharging cargo upon a wharf or pier the consignee of the cargo has the right to enter upon the wharf or pier and remove such cargo without payment of further fee or charge. The plaintiff contends that wharfage is paid by the vessel for the service rendered to the vessel, or for the use by the vessel of the wharf, and for nothing else — and that for the subsequent service rendered to the consignee, or the subsequent use of the wharf by him in receiving and removing the cargo, the cargo or the consignee should pay an additional compensation; and in support of this is cited the case of *International Hide Co.* v. *New York Dock Co.* (93 App. Div. 562), where it is said that in *Woodruff* v. *Havemeyer* (*supra*) it was expressly declared that section 862 of the charter of the new city of New York * could not be construed "'to prohibit the owner of a private wharf from entering into a contract for the landing and deposit of goods upon his wharf upon such terms as may be agreed upon between himself and the owner of the goods, nor can it be construed as requiring him to store goods for any period of time without compensation;'" from which the court said it followed "that when a wharf in the city of New York is used for less than twenty-four hours for the deposit of merchandise, and there is no express agreement as to the measure of compensation, 'the contract is implied and the proprietor is entitled to recover what is just and reasonable for the use of his property and the benefit conferred.'" It is not necessary to decide between these two contentions, for a second objection taken by the defendant seems to me to forbid a recovery by the plaintiff. This objection is set forth in the answer in the statement of the second defense, and is to the effect that the defendant has a free right of way and right to transport its goods over the said

* See Laws of 1901, chap. 466, § 862.— [Rep.

wharf by reason of a deed made by the Atlantic Dock Company to Nathaniel L. Griswold in 1842. The facts in brief are as follows:

The Atlantic Dock Company was a corporation created by a special act of the Legislature in 1840 [*] for the purpose of building and maintaining docks, bulkheads, piers, basins, etc., in the city of Brooklyn, for commercial uses, with capacity to acquire, hold and improve such lands " as may be necessary and convenient to carry the objects of said corporation into full force and effect " — and was authorized by its charter " to receive reasonable dockage and wharfage from all persons using " the facilities it should provide. Thereafter the company acquired title to a large tract of land lying along the East river, in the sixth ward of Brooklyn, including the several lots now owned by the defendant in this action, and prior to 1850 improved the same by the construction of what is known as the Atlantic basin and various wharves and piers, thus adapting it to the business for which the company was created. On July 30, 1842, the Atlantic Dock Company, by a full covenant warranty deed, granted and conveyed to Nathaniel L. Griswold twenty-five lots or parcels of ground with their appurtenances, designated by numbers on a map referred to in said deed as " Map of property in the Sixth Ward of the City of Brooklyn, Port of New York, belonging to the Atlantic Dock Company, surveyed September, 1841, by Williard Day, City Surveyor," and all situated on the easterly side of and abutting on India wharf — " Subject, however " (so it was stated in the deed), " to the right of way in common with others over the street or space between the said lots and the outside line or face of the dock on the basin side of said lots, which street or space is fifty feet wide, as laid down on their said map." The court has said that this means or is equivalent to " Together with a right of way." (59 App. Div. 93.) The " street or space " here referred to was the India wharf. The defendant is now the owner of all that was conveyed to Griswold by the dock company. At the date of the conveyance to him the property of the dock company had not been improved — that is, the contemplated basin, wharves, piers, etc., had not been constructed. It was evidently expected by both parties to the deed that the lots con-

---

[*] See Laws of 1840, chap. 215. — [REP.

veyed, or some of them, would be improved by the erection thereon
of stores or warehouses. The deed described with much particu-
larity how such stores or warehouses should be built, their height
and depth, the thickness of the walls, the materials to be used, the
uses to which they should not be put, etc., and then declared:
"The owner or owners of any such store or warehouse when
erected shall have the right of laying down railways from each [of]
the said pier lots to the outside line of said pier or dock, in such
manner as will admit carts and carriages to pass over them with
convenience and so as not to obstruct the passageway." Now it
is worth mentioning that Griswold was one of the incorporators of
the Atlantic Dock Company and one of its directors during the first
year of its existence, and presumably was acquainted with its plans
and intentions. He knew that a free right of way across the wharf
to the basin would give the lots additional value and that such a
right of way would be indispensable to a comfortable use of the
warehouses that might be built upon the lots. He bought the lots
with that easement or privilege attached to them, and paid for lots
and easement the sum of $40,000. Of the dock company's deed to
him the Court of Appeals has said: "The intention of the parties
as expressed in the grant no doubt was to give to the plaintiff such
use of the dock and the basin as was reasonably necessary in the trans-
action of its business." (173 N. Y. 175.) The plaintiff puts a differ-
ent construction on the deed. The argument of its learned counsel
is that, as the wharf was private property, it could not be used by
the public without the owner's consent, and that any permission to
use given by the owner was revocable at his pleasure, and that what
was granted to Griswold and his assigns was an "irrevocable license
to come upon the wharf for the purpose of doing business with
the dock company," they paying a reasonable price for the privilege
of doing so. This claim is based largely upon the following provision
in the deed: "The said parties of the first part reserve to them-
selves, their successors or assigns, the right to all dockage, or
wharfage, as well as the entire control, interest and income of all
their piers, docks, bulkheads and basin, and hereby obligate and
bind themselves, their successors or assigns, to keep the said piers,
docks and bulkheads in repair at their own proper costs and
expenses." "Entire income," counsel says, means entire income,

and not something less than entire income, which cannot be denied. The question here is — are the defendant's lots liable to contribute to that income, or were they released from such liability by the grant to Griswold? My opinion is that they were. The grant is a plain grant of a "right of way," for which the grantor paid and which his assigns are entitled to use without payment of toll. Counsel also says that the expression "in common with others" in the deed means, or is equivalent to, "on the usual terms." I do not think so; Griswold was not to have an exclusive right of way, and the deed so stated.

My conclusion is that the defendant has the right to use the right of way over the wharf in the manner described in the 2d paragraph of the 4th article of the stipulated facts (*Arnold* v. *Fee,* 148 N. Y. 214; *Gillespie* v. *Weinberg,* Id. 238) without charge by the plaintiff, and that, therefore, there should be judgment for the defendant dismissing the complaint.

If counsel desire to submit findings in addition to the stipulated facts, they may do so on or before October fourth.